STATE of Wisconsin, Plaintiff-Respondent,

v.

Victor NAYDIHOR, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 01–3093–CR, 01–3094–CR. Oral argument December 17, 2003.—Decided April 15, 2004.*

2004 WI 43

(Also reported in 678 N.W.2d 220.)

For the defendant-appellant-petitioner there were briefs by *Philip J. Brehm,* Janesville, and oral argument by *Philip J. Brehm.*

For the plaintiff-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. JON P. WILCOX, J. The defendant, Victor Naydihor (Naydihor), seeks review of a published decision of the court of appeals, *State v. Naydihor,* 2002 WI App 272, 258 Wis. 2d 746, 654 N.W.2d 479, that affirmed an order of the Kenosha County Circuit Court, Bruce E. Schroeder, Judge, denying his motion for postconviction relief.

I

¶ 2. On February 25, 2000, Naydihor was involved in an automobile collision in Kenosha County. The law enforcement personnel that responded noticed several bottles of whiskey in Naydihor's vehicle and numerous empty beer bottles. Naydihor was unconscious and the deputies noticed a strong odor of alcohol emanating

from him. Witnesses observed that Naydihor had run a red light and collided with the victim's vehicle. The investigation also revealed that Naydihor had a blood alcohol content of .265. On March 7, 2000, the State filed a criminal complaint against Naydihor charging him with three counts of criminal conduct arising from the collision: 1) injury by intoxicated use of a vehicle, contrary to Wis. Stat. § 940.25(1)(a) (1999–2000);[1] 2) operating while intoxicated causing injury, contrary to Wis. Stat. §§ 346.63(2)(a)(1) and 346.65(3m); and 3) operating with a prohibited alcohol concentration causing injury, contrary to Wis. Stat. §§ 346.63(1)(b), 346.65(3m), and 340.01(46m). Naydihor also received several ordinance violations stemming from the incident, including mandatory seat belt violation, open intoxicant in the vehicle, operating without a valid driver's license, and violation of traffic control.

¶ 3. The second count in the complaint was dismissed at Naydihor's initial appearance on March 7, 2000. The State filed an information on March 15, 2000, alleging the same counts as did the criminal complaint. On April 7, 2000, as part of a plea agreement with the State, Naydihor pled guilty to the first count in the information and the other counts were dismissed. The State agreed to recommend probation but "retained a free hand on the conditions of that probation." Sentencing was scheduled for May 18, 2000; however, at that time the State informed the court that Naydihor would be charged with felony bail jumping as a result of his failure to comply with the terms of his bond. While on

---

[1] All statutory references are to the 1999–2000 version unless otherwise indicated.

bond, Naydihor failed to appear for the presentence investigation and tested positive for tetrahydrocannabinol.

¶ 4. On July 6, 2000, Naydihor appeared for sentencing in both matters. He pled no contest to the bail jumping charge. The Kenosha County Circuit Court, Barbara A. Kluka, Judge, sentenced Naydihor to three years in prison and five years extended supervision on his driving offense. The court also sentenced Naydihor to ten years of consecutive probation on the bail jumping offense. On December 4, 2000, Naydihor filed a motion seeking postconviction relief, alleging that under *State v. Poole,* 131 Wis. 2d 359, 389 N.W.2d 40 (Ct. App. 1986), the prosecutor breached the plea agreement by repeatedly stating to the court that he had made the plea agreement before reading the presentence report, which indicated that Naydihor had previous convictions for alcohol-related offenses. The State did not oppose the postconviction motion, and on January 13, 2001, the circuit court granted Naydihor's motion and ordered resentencing before a different judge.

¶ 5. On March 5, 2001, Naydihor was resentenced by Judge Schroeder. Regarding the injury by intoxicated use of a vehicle charge, the prosecutor recommended ten years probation with several conditions. The prosecutor recommended that Naydihor be required to: 1) obey all rules of supervision; 2) have no association with any known felons, drug dealers or drug users; 3) refrain from alcohol or nonprescribed controlled substances and then only controlled substances in strict accordance with the prescription order; 4) submit to chemical dependency assessments and complete all treatment; 5) submit to random weekly urinalyses; 6) attend counseling; 7) have no contact with the victim; 8) pay restitution; 9) not be present in any

591

taverns; 10) not possess any alcohol containers; 11) not operate a motor vehicle; 12) not be present in any liquor store, including any grocery store that sells liquor; and 13) not be present in any restaurant that serves alcohol. In addition, the prosecutor recommended that Naydihor serve one year in the Kenosha County jail and perform 2000 hours community service. To support these conditions, the prosecutor detailed Naydihor's history of substance abuse, the effect of the crime on the victim, and the need for deterrence. The circuit court sentenced Naydihor to five years initial confinement and five years extended supervision on the driving offense and ten years consecutive probation on the bail jumping offense. The circuit court justified the increased sentence on the grounds that the condition of the victim had deteriorated since the initial sentencing and her medical bills had substantially increased.

## II

¶ 6. On September 14, 2001, Naydihor again moved the court for postconviction relief. In his motion he requested the following: 1) a *Machner*[2] hearing to determine whether trial counsel was ineffective during resentencing; 2) a vacation of the sentence imposed by Judge Schroeder and resentencing in front of another judge; 3) that the State advocate for the terms of the plea agreement at resentencing; and 4) in the alternative, a reinstatement of the original sentence pronounced by Judge Kluka. On October 22, 2001, Judge Schroeder heard the motion and thereafter issued an order on November 13, 2001, denying Naydihor's motion for postconviction relief on all grounds.

---

[2] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶ 7. On appeal, Naydihor argued that his trial counsel was ineffective at resentencing because he failed to object to comments made by the prosecutor that allegedly breached the plea agreement governing the injury by intoxicated use of a vehicle charge. *Naydihor*, 258 Wis. 2d 746, ¶ 1.[3] Naydihor also alleged that his increased sentence violated due process because it was the product of judicial vindictiveness. *Id.* The court of appeals held that the circuit court did not abuse its discretion in denying the *Machner* hearing because the prosecutor had not violated the terms of the plea agreement at resentencing and thus Naydihor's counsel was not ineffective for failing to object. *Id.,* ¶ 2. The court of appeals also held that the resentencing court was entitled to consider the deteriorated condition of the victim in resentencing Naydihor and therefore the increased sentence was not a product of judicial vindictiveness. *Id.*

¶ 8. We affirm the decision of the court of appeals and hold that the prosecutor did not breach the plea agreement at resentencing and thus Naydihor was not entitled to a *Machner* hearing on his ineffective assistance of counsel claim. We also affirm the court of appeals' determination that Naydihor's increased sentence was not the product of judicial vindictiveness. We hold that no presumption of vindictiveness arose on the facts of this case. We further hold that even if there were a presumption of vindictiveness, it was overcome because the victim's testimony concerning her deterio-

---

[3] Apparently, Naydihor also alleged a breach of the plea agreement with respect to his bail jumping offense in the circuit court. However, he has not preserved this issue on appeal. The issue before us concerns the plea agreement governing the injury by intoxicated use of a vehicle charge.

rated condition constituted a legitimate nonvindictive reason for increasing Naydihor's sentence.

### III

¶ 9. Naydihor's ineffective assistance of counsel claim is premised on defense counsel's failure to object to an alleged breach of a plea agreement. Under the familiar standard of *Strickland v. Washington,* 466 U.S. 668 (1984), the defendant must establish both that counsel's performance was deficient and that he was prejudiced as a result of that deficient performance. *State v. Gordon,* 2003 WI 69, ¶ 22, 262 Wis. 2d 380, 663 N.W.2d 765. Accordingly, the threshold inquiry on Naydihor's ineffective assistance of counsel claim is whether the State's actions constituted a breach of the plea agreement. If the State did not breach the plea agreement, then the failure of Naydihor's counsel to object did not constitute deficient performance, and the circuit court correctly ruled that Naydihor was not entitled to a *Machner* hearing.

¶ 10. This court set forth the standards for reviewing an alleged breach of a plea agreement in *State v. Williams,* 2002 WI 1, 249 Wis. 2d 492, 637 N.W.2d 733:

> [A]n accused has a constitutional right to the enforcement of a negotiated plea agreement. . . .
>
> A prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement. An actionable breach must not be merely a technical breach; it must be a material and substantial breach. When the breach is material and substantial, a plea agreement may be vacated or an accused may be entitled to resentencing.

*Id.,* ¶¶ 37–38.

¶ 11. Whether the State breached a plea agreement is a mixed question of fact and law. The precise terms of a plea agreement between the State and a defendant and the historical facts surrounding the State's alleged breach of that agreement are questions of fact. *Id.*, ¶ 2. On appeal, the circuit court's determinations as to these facts are reviewed under the clearly erroneous standard. *Id.*, ¶ 20. Whether the State's conduct constitutes a material and substantial breach of the plea agreement is a question of law that this court reviews de novo. *Id.* A breach is material and substantial when it "defeats the benefit for which the accused bargained." *Id.*, ¶ 38.

¶ 12. While the parties offer differing characterizations of the plea agreement, they both agree as to where the plea agreement is found in the record.[4]

---

[4] Naydihor's pleas were both entered in the record during the proceedings on April 7, 2000. It is during this proceeding that the terms of the plea bargain appear on the record:

THE COURT: This is on the calendar this morning for a plea hearing. . . .

[PROSECUTOR]: Judge, the agreement is that the defendant would be entering a plea to Count 1, which is injury by intoxicated use of a vehicle. Count 3, which is the prohibited alcohol concentration, would be dismissed.

In regards to the TR files, judge, the defendant is going to be entering a plea to 1518, which is open intoxicants in a vehicle. The remaining citations will be dismissed.

The State is agreeing to recommend probation, but retains a free hand on the conditions of that probation.

[DEFENSE COUNSEL]: You're also dismissing Count 2.

[PROSECUTOR]: Count 2 has already been dismissed, judge.

THE COURT: Thank you. Correct, [DEFENSE COUNSEL]?

Essentially, Naydihor agreed to plead guilty to the first count in the information; in exchange, the State agreed to drop the third count and recommend probation on the first count. The State, however, remained free to recommend the conditions and length of probation. At the hearing on Naydihor's motion for postconviction relief, Judge Schroeder indicated that he was familiar with the terms of the plea agreement as set forth in the record of the original sentencing proceedings before Judge Kluka. Defense counsel indicated that there had been no change in the agreement since the original sentencing.

¶ 13. Therefore, as there is no dispute over the terms of the plea agreement, we are left to determine whether the comments made by the State at resentencing breached the terms of that agreement. The comments of the prosecutor at resentencing are set forth in full below:

> Thank you, your Honor. I embrace most of the concerns expressed by the victim who spoke to the Court, except one, where she is critically wrong. This is a collision. It's not an accident when there is alcohol-impaired driving involved. We use that term sometimes lightly when we say it's an accident. Maybe we do it because, as is stated to the Court, the defendant didn't mean to do it. But this is not the type of offense where what the defendant means to do has any relevance whatsoever. Alcohol-impaired driving that leads to injury of any sort is a danger, an equal opportunity

---

[DEFENSE COUNSEL]: That is correct. Count 2 was dismissed at the initial appearance, but I see it was carried over in the information.

At Naydihor's initial appearance, his attorney recited the terms of the plea agreement in the same manner.

danger committed by the rich and the poor, persons who have lengthy criminal histories behind them and individuals who, except for their alcohol problem, have never seen the inside of a courtroom as a defendant in a criminal case. The respectable and the less than respectable. But the common denominator is that the threat to the community is just as great regardless of who the defendant is and regardless of the circumstances.

And that's one of the things that I point out to the Court because sometimes we look at these things a little too lightly and we fail to recognize the fact that a person who is out of control sometimes is more a danger to the community at large and to themselves than someone who commits an act intentionally and who has a focus and a target and knows exactly what they are going to do and limits the scope of what they do. The drunken driver behind the wheel of a fast-moving two-ton piece of machinery, who is out of control is indiscriminate and substantially more dangerous.

The victim impact statement makes a couple of interesting points that were not covered in the oral comments to the Court. Yes, I'm now in a wheelchair and unable to earn a living. I had to get help to do house-work and also to help my husband, who is totally blind. I'm behind in all my bills because I have no income. I'm absolutely terrified of drunk drivers. The fear and anxiety of my family when I was injured so badly was terrible. My 5 year-old granddaughter is still having bad dreams. She asks me, grandma, is the man who hurt you going to stop drinking now. I told her I hope so. And there is a request for a no contact order.

What you heard and what you saw is the real face of the consequences of alcohol-impaired driving. It doesn't matter what this defendant or any other defendant intended to do. It's what they did. The crime began

by getting behind the wheel of a motor vehicle when the defendant was impaired to the point that he could not safely control his driving or his other behavior. Now, that's just talking about the offense and the offender generically because there are, as I said, these common threads in these cases. This is one of those crimes where the respectable and the less than respectable are equally as dangerous.

In this case this is exacerbated by the defendant's lack of insight into what has been demonstrated throughout the presentence investigation report as a lengthy history of polysubstance abuse. The fact that while he was out on bond in this case he had a dirty UA as referenced in the report from Wisconsin Correctional Services on April 19, 2000 to this Court. While he was out on bond, he had a dirty UA for marijuana. And also the defendant failed to report to WCS faithfully when he was out on bond when he was given a chance in the community. The defendant with regard to the WCS dirty UA responded, I only smoked the residue in the pipe.

The defendant believes he has a drinking problem because he does not know why he drinks, but then he says I don't think I'm addicted to anything.

This defendant is an individual who needs to be controlled for a lengthy period of supervision because he presents a significant danger to the community and to himself. There is no excuse whatsoever for what happened on February 25th last year. There is no excuse for an otherwise productive citizen of this community to now be confined to a wheelchair, to have bills racking up because of her inability to work and to have her young grandchild in fear when they did nothing wrong and the defendant did everything wrong.

¶ 14. The prosecutor then made his sentence recommendation, as noted *supra.* He concluded:

598

It is very, very necessary that a message be sent this type of behavior will not be tolerated in this community or in any other community in this state; and that individuals who perpetrate these crimes will be held accountable, will be monitored and will understand the reason why.

And, unfortunately, all the restitution in the world is not going to give [the victim] the ability to walk that she had before February 25, 2000.

¶ 15. Naydihor argues that this case is controlled by *Williams* and that the above comments constituted a material and substantial breach of the plea agreement because the prosecutor implied to the court that a harsher sentence was needed than that recommended. Naydihor repeatedly takes issue with the fact that the State did not say one thing positive about him. In addition, Naydihor faults the prosecutor for highlighting his history of substance abuse, the victim's substantial injuries, and calling him a danger to the community. As such, Naydihor asserts that these actions constituted an "end-run" around the plea agreement.

¶ 16. The State responds that the prosecutor's comments must be read in light of the actual sentence recommendation. The State notes that as part of the plea bargain, it remained free to argue the length of probation and the terms of that probation. Essentially, the State argues that the prosecutor's comments were necessary to justify the recommended ten years probation and what it characterizes as "rather restrictive conditions of probation." In addition, the State argues that the prosecutor did not adopt the victim impact statement as his own but merely reiterated what the victim had already told the court. Also, the State finds it significant that the prosecutor never referred to a

term of imprisonment (as opposed to the one year of jail time he recommended as a condition of probation).

¶ 17. In order to determine whether the prosecutor's comments constituted a substantial and material breach of the plea agreement in this case, we look to other cases that have addressed this issue. In *Williams*, this court held that the State breached the plea agreement because the prosecutor's comments at sentencing "undercut the essence of the plea agreement." *Williams*, 249 Wis. 2d 492, ¶ 46. The prosecutor in *Williams* stated that since entering into the plea bargain, her impression of the defendant changed after she read the presentence investigation report and spoke with the defendant's ex-wife. *Id.*, ¶ 47.

¶ 18. We stated that the result of this was that the prosecutor "implied that had the State known more about the defendant, it would not have entered into the plea agreement." *Id.* We reasoned that by adopting the information contained in the presentence investigation report as her own, "[t]he prosecutor's declaration of her personal opinion created the impression that the prosecutor was arguing against the negotiated terms of the plea agreement." *Id.*, ¶ 48.

> The State did not merely recite the unfavorable facts about the defendant to inform the circuit court fully. Rather, the State covertly implied to the sentencing court that the additional information available from the presentence investigation report and from a conversation with the defendant's ex-wife raised doubts regarding the wisdom of the terms of the plea agreement. The State cannot cast doubt on or distance itself from its own sentence recommendation. Although the State is not barred from using negative information about the defendant that has come to light after the plea agreement and before the sentencing, the State

> may not imply that if the State had known more about the defendant, the State would not have entered into the plea agreement.

*Id.,* ¶ 50. Finally, we stated that "[t]his information was *unnecessary to explain or support the agreement* that the State would recommend the minimum sentence of probation; the information supports a more severe sentence of a prison term." *Id.,* ¶ 51 (emphasis added).

■

¶ 19. In *State v. Hanson,* 2000 WI App 10, ¶ 14, 232 Wis. 2d 291, 606 N.W.2d 278, the defendant argued that the prosecutor had breached the plea agreement by "rendering a less than neutral recital of the agreement." Specifically, the defendant argued that the prosecutor breached the agreement by noting that the case was "extremely violent" and describing the violence and other aggravating factors associated with the crime. *Id.,* ¶ 25. In rejecting the defendant's claim, the court of appeals noted, "[a] prosecutor may not render a less than neutral recitation of the plea agreement." *Id.,* ¶ 24. However, while "the State must obviously abide by its agreement to cap its sentencing recommenda- tion . . . .[it] is free to argue for an appropriate sentence within the limits of the cap." *Id.,* ¶ 27. The court of appeals concluded that "the prosecutor was entitled under the plea agreement to speak to the aggravating factors relevant to the sentencing and to seek a sen- tence at the high end of the cap." *Id.,* ¶ 28.

¶ 20. In *State v. Ferguson,* 166 Wis. 2d 317, 321, 479 N.W.2d 241 (Ct. App. 1991), the defendant argued that while the prosecutor accurately recited the terms of the plea agreement, the prosecutor's derogatory comments about the defendant violated the agreement. Under the plea bargain, the prosecutor agreed to rec-

ommend probation but did not agree to any particular length and was free to argue for the maximum. *Id.* at 319. After recommending the maximum sentence, the prosecutor discussed the severity of the offense, stating, "these were the most perverted of all perverted sex acts." *Id.* The prosecutor concluded, "this is the sickest case that I have seen or read about. If I refer to this defendant as 'sleaze,' I think that would be giving him a compliment." *Id.* at 319–20.

¶ 21. In rejecting the defendant's claim, the court reasoned:

> The plea agreement in this case did not prohibit the state from informing the trial court of aggravating sentencing factors. Nor could it. At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot "be immunized by a plea agreement between the defendant and the state." A plea agreement which does not allow the sentencing court to be appraised of relevant information is void against public policy.

*Id.* at 324 (quoting *Elias v. State,* 93 Wis. 2d 278, 285, 286 N.W.2d 559 (1980)).

¶ 22. After noting that all of the prosecutor's comments related to the three primary sentencing factors, the court of appeals ruled:

> In order to convince the trial court to impose the maximum allowable sentence, the prosecutor was free to list the applicable aggravating factors. In a sense, he had to do so, since he was asking for the maximum. The prosecutor highlighted the special vulnerability of the victim, the extreme cruelty of the acts against the victim, the fact that the offenses involved multiple victims. . . .
>
> Nor are we persuaded that the prosecutor's deni-

602

grating remarks about the defendant's character were inappropriate, in light of the plea agreement. . . .

The prosecutor in this case faced the unenviable task of convincing the sentencing court that [the defendant's] actions were such that he deserved the maximum allowable sentence, but should only be required to actually serve one year of county jail time. While his comments regarding [the defendant] displayed more vitriol than those typically accompanying a one-year jail term recommendation, *we believe they were appropriate in light of the rather unusual terms of the plea agreement.* We conclude the prosecutor's remarks did not amount to a breach of the plea agreement.

*Id.* at 324–25 (emphasis added).

¶ 23. In *State v. Jorgensen,* 137 Wis. 2d 163, 165, 404 N.W.2d 66 (Ct. App. 1987), the issue on appeal was whether the State violated the terms of a plea agreement under which the State agreed to remain silent at sentencing. The prosecutor, however, did not remain silent at sentencing after defense counsel incorrectly relayed the facts of the underlying crime. *Id.* at 166–67. The court of appeals ultimately rejected the defendant's allegations, noting that the prosecutor, even under an agreement to remain silent at sentencing, is not required to remain silent when inaccurate information is conveyed to the sentencing court. *Id.* at 169–70. Finally, in *Poole,* 131 Wis. 2d at 364, the court of appeals ruled that the prosecutor's comments at sentencing breached the plea agreement because they "implied that circumstances had changed since the plea bargain, and that had the state known of the other instances of defendant's misconduct, they would not have made the agreement they did."

¶ 24. While the prosecutor's conduct at the original sentence hearing clearly constituted a breach of the plea agreement under *Poole*,[5] we believe this case is factually similar to both *Hanson* and *Ferguson*.[6] *Hanson* stands for the proposition that the State may discuss negative facts about the defendant in order to justify a recommended sentence within the parameters of the plea agreement. *Hanson,* 232 Wis. 2d 291, ¶¶ 27–28.

¶ 25. Likewise, *Ferguson* permits the State to discuss aggravating sentencing factors and relevant behavioral characteristics of the defendant in order to justify an unusual sentence recommendation within the constraints of the plea agreement. *Ferguson,* 166 Wis. 2d at 324–25. *Ferguson* specifically concluded that a prosecutor could discuss "pertinent factors relating to

---

[5] At Naydihor's original sentence hearing, the prosecutor noted that while his recommendation remained the same, the presentence investigation report contained information relating to Naydihor's prior offenses of which the prosecutor was unaware at the time the State entered into the plea agreement.

[6] Naydihor also argues that under *State v. Poole,* 131 Wis. 2d 359, 364, 389 N.W.2d 40 (Ct. App. 1986), the State breached the plea agreement by bringing to the court's attention new information, namely, the fact the condition of the victim deteriorated. We reject this argument. Unlike *Poole,* the prosecutor did not intimate that he would not have entered into the plea bargain had he known of this information. Quite the contrary, in the present case the prosecutor used this new information to justify the recommended conditions of probation. This is clearly allowed under *State v. Williams,* 2002 WI 1, ¶ 50, 249 Wis. 2d 492, 637 N.W.2d 733 (noting that "the State is not barred from using negative information about the defendant that has come to light after the plea agreement and before the sentencing").

the defendant's character and behavioral pattern." *Id.* at 324. Indeed, the court in *Ferguson* stated that a prosecutor has the duty to discuss such information in order to justify a harsh and unusual sentence recommendation. *Id.* at 325. Further, no plea bargain can prevent a prosecutor from bringing to the court's attention relevant sentencing information. *Id.* at 234. *See also Jorgensen,* 137 Wis. 2d 169–70 (*accord*). Finally, under *Williams,* the State may "recite the unfavorable facts about the defendant to inform the circuit court fully." *Williams,* 249 Wis. 2d 492, ¶ 50.

¶ 26. Here, all of the prosecutor's comments were related to the three primary sentencing factors: " 'the nature of the crime, the character of the defendant, and the rights of the public.' " *Ferguso*n, 166 Wis. 2d at 325 (quoting *State v. McQuay,* 154 Wis. 2d 116, 126, 452 N.W.2d 377 (1990)). The State's recitation of Naydihor's history of substance abuse related to the "character of the defendant" and was necessary to justify its recommendation that Naydihor be prohibited from entering businesses, even restaurants, that sold alcohol. The fact that Naydihor had failed to comply with the terms of his bond, had a dirty urinalysis, and displayed a cavalier attitude towards substance abuse was also related to the "character of the defendant" and was necessary to support the State's recommendation that Naydihor submit to weekly random drug testing, chemical dependency assessments, and counseling.

¶ 27. By noting the need for deterrence and characterizing the defendant as a "danger to the community," the prosecutor was justifying the ten years of highly monitored probation and one year of jail time it recommended as a condition of probation. These comments and the prosecutor's statement that no amount of restitution was sufficient were relevant to the rights

of the public. The prosecutor's discussion of information contained in the victim impact statement, namely, how the crime had affected the victim, is relevant to the nature of the crime. *See Hanson,* 232 Wis. 2d 291, ¶ 28. Thus, in contrast to *Williams,* the prosecutor's comments in the present case were necessary to support the precise sentence it recommended. The information the prosecutor discussed constituted no more than pertinent behavioral characteristics and aggravating factors relevant to sentencing and was necessary to justify the recommended sentence. *See Ferguson,* 166 Wis. 2d at 324.

¶ 28. Also, the State here, unlike *Williams,* did not agree to recommend the minimum sentence; it agreed only to recommend some type of probation and dismiss one of the charges. Further, the negative information about Naydihor that the prosecutor conveyed to the court in no way insinuated that the prosecutor was distancing itself from its recommendation. Quite the contrary, the prosecutor's comments can be characterized as an enthusiastic argument supporting the "rather unusual" recommended sentence. *See Ferguson,* 166 Wis. 2d at 325.

■

¶ 29. While the prosecutor did direct the court to certain facts contained in the victim impact statement, this is not prohibited under *Williams.* In *Williams,* the prosecutor's comments implied that the additional information it received from the presentence investigation report and the defendant's ex-wife justified a harsher sentence than that recommended. *Williams,* 249 Wis. 2d 492, ¶ 50. We noted that the prosecutor may convey negative information about the defendant to fully inform the court, *id.,* ¶ 49, but " 'what the prosecutor may not do is personalize the information,

adopt the same negative impression as [the author of the presentence investigation report] and then remind the court that the [author] had recommended a harsher sentence than recommended.' " *Id.,* ¶ 48 (quoting *State v. Williams,* 2001 WI App 7, ¶ 12, 241 Wis. 2d 1, 624 N.W.2d 164). Here, the prosecutor made no mention of the recommendation of the presentence investigation report or otherwise "intimated to the court that it no longer supported the plea agreement." *Williams,* 249 Wis. 2d 492, ¶ 45.

■■

¶ 30. Thus, while a defendant is entitled to a neutral recitation of the terms of the plea agreement, *Poole,* 131 Wis. 2d at 364, and the prosecutor may not overtly or covertly convey to the court that a sentence harsher than that recommended is warranted, *Hanson,* 232 Wis. 2d 291, ¶ 24, we have found no case that holds that the State is obligated to say something nice or positive about the defendant in order to avoid breaching a plea agreement. Naydihor bargained only for the State to drop one of the counts in the information and to recommend probation. Naydihor did not bargain for the prosecutor to extol his virtues at sentencing. The State remained free to recommend whatever length and terms of probation it felt appropriate. The State chose to recommend a lengthy period of probation with very extensive conditions. The prosecutor's comments did not imply to the court that the State believed a more severe sentence than that recommended was appropriate. Rather, the prosecutor's comments supported the recommended sentence and were relevant to the pertinent sentencing factors the court was required to consider.

¶ 31. Having reviewed the prosecutor's statements in their entirety, we believe that "the prosecutor

607

strongly affirmed the plea agreement and did not make any statements that expressly, covertly or otherwise suggested that the State no longer adhered to the agreement." *Hanson,* 232 Wis. 2d 291, ¶ 29. We hold that the State did not breach the plea agreement and therefore, Naydihor's counsel was not deficient for failing to object. As such, Naydihor's ineffective assistance of counsel claim fails.

## IV

### A

■■■

¶ 32. Naydihor was originally sentenced to three years of initial confinement and five years of extended supervision. At resentencing, the circuit court sentenced Naydihor to five years of initial confinement followed by five years of extended supervision. Judge Schroeder justified the increased sentence on the following basis:

> And you have ruined this lady's life. And this case, by the way, is significantly different than what it was when it was before Judge Kluka because Judge Kluka was working off this presentence, which stated that [the victim] suffered extensive injuries to her leg as a result of this accident, etc. [The victim] indicated that as a result of the injuries suffered to her left leg, she may have some permanent disability. Well, now we know that she will. And, in fact, she says she'll never walk again. That's a monstrous increase in the enormity of this crime from how it appeared before Judge Kluka. When Judge Kluka heard this case, it says [the victim] believes her medical expenses total at least $30,000.00. Now she says it's $75,000.00. And she hasn't seen anywhere near the end of it yet. This is a serious, violent crime. Much more serious than most of the things we see passing through the courts.

¶ 33. Naydihor argues that this increased sentence violated his constitutional right to due process because it was the product of judicial vindictiveness. Naydihor does not assert that his increased sentence was the result of actual vindictiveness; rather, he argues that under *North Carolina v. Pearce,* 395 U.S. 711 (1969), his increased sentence created a presumption of vindictiveness that was never rebutted. In *Pearce,* the United States Supreme Court concluded that due process prohibited a defendant from being given a harsher sentence at resentencing because of vindictiveness for having successfully attacked his first conviction. The Court stated:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.

*Id.* at 725–26. Subsequent cases have interpreted *Pearce* as applying "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin,* 457 U.S. 368, 374 (1982). The Court has recognized that where the presumption is inapplicable, a defendant is required to demonstrate actual

vindictiveness in order to prevail. *Wasman v. United States,* 468 U.S. 559, 568–69 (1984). This court has expressly adopted the approach of *Pearce* and its progeny, noting "[t]he constitutionality of an increased sentence upon resentencing is determined by reference to *Pearce* and the Supreme Court cases elaborating on the *Pearce* presumption." *State v. Church,* 2003 WI 74, ¶ 52, 262 Wis. 2d 678, 665 N.W.2d 141.

¶ 34. The parties dispute whether the *Pearce* presumption applies in this case and if so, whether the new information concerning the victim's deteriorated condition at the time of resentencing constitutes a justifiable basis for increasing the sentence. The State argues that the *Pearce* presumption applies only in circumstances where a reasonable likelihood of vindictiveness exists. It asserts that no reasonable likelihood of vindictiveness exists under these facts because: 1) a different judge resentenced Naydihor; 2) the court that imposed the original sentence granted Naydihor's motion for resentencing, and the case was not reversed by an appellate court; 3) Naydihor was resentenced due to an error by the prosecutor, not the original sentencing court; and 4) the case was set for resentencing, not a retrial. Naydihor counters that there is a reasonable likelihood of vindictiveness, such that the *Pearce* presumption should apply, because: 1) the resentencing court was aware of the first sentence and used the first sentence as a "baseline"; 2) the judge that resentenced him may have felt that there was no error to correct because that judge was not the same judge that ordered resentencing; and 3) both judges are equals, and this court can assume that judges who work at the same level have a stake in discouraging defendants from seeking review of their sentences.

610

¶ 35. We agree with the State that the *Pearce* presumption of vindictiveness does not apply to the facts of this case.

¶ 36. While *Pearce* created a rebutable presumption of vindictiveness, its prophylactic rule has, as the State correctly notes and Naydihor freely admits, been limited by subsequent cases. The United States Supreme Court has since explained that it has "restricted application of *Pearce* to areas where its 'objectives are thought most efficaciously served.'" *Texas v. McCullough,* 475 U.S. 134, 138 (1986) (quoting *Stone v. Powell,* 428 U.S. 465, 487 (1976)). "Such circumstances are those in which there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Alabama v. Smith,* 490 U.S. 794, 799 (1989) (quoting *Goodwin,* 457 U.S. at 373). We have recognized that the Court has limited the *Pearce* presumption to those contexts where "[i]nherent in the[ ] circumstances is the 'reasonable likelihood of vindictiveness.'" *Church,* 262 Wis. 2d 678, ¶ 54 (quoting *Goodwin,* 457 U.S. at 373).[7]

---

[7] The United States Supreme Court has utilized varying terminology to describe when the presumption in *North Carolina v. Pearce,* 395 U.S. 711 (1969), is applicable. Thus, the Court has stated that the *Pearce* presumption applies only where there is a "realistic likelihood of 'vindictiveness,'" *Blackledge v. Perry,* 417 U.S. 21, 27 (1974), and not where there is "no realistic motive for vindictive sentencing[.]" *Texas v. McCullough,* 475 U.S. 134, 139 (1986). *See also, United States v. Goodwin,* 457 U.S. 368, 373 (1982) (noting that "[g]iven the severity of the presumption . . . the Court has [applied it] only in cases in which a reasonable likelihood of vindictiveness exists"); *Chaffin v. Stynchcombe,* 412 U.S. 17, 26 (1973) (stating that the *Pearce* presumption is not applicable if there is no "'possibility of vindictiveness'"); *Colten v. Kentucky,* 407 U.S.

¶ 37. The Court has also explained that a reasonable likelihood of vindictiveness exists only if there is a realistic possibility that the sentencing court, after being reversed, may engage in self-vindication and retaliate against the defendant for having successfully pursued appellate relief. *See Smith,* 490 U.S. at 799–800; *McCullough,* 475 U.S. at 138–39; *Goodwin,* 457 U.S. at 376–77; *Blackledge v. Perry,* 417 U.S. 21, 27 (1974); *Chaffin v. Stynchcombe,* 412 U.S. 17, 27 (1973); *Pearce,* 395 U.S. at 725. The concern over actual vindictiveness and self-vindication is premised on the notion that "the institutional bias inherent in the judicial system against the retrial of issues that have already been decided . . . might also subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question." *Goodwin,* 457 U.S. at 376–77.

¶ 38. As the Court has subsequently clarified:

> While the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." As we explained in *Texas v. McCullough,* "the evil the [*Pearce*] Court sought to prevent" was not the imposition of "enlarged sentences after a new trial" but "vindictiveness of a sentencing judge."

*Smith,* 490 U.S. at 799 (quoting *McCullough,* 475 U.S. at 138). As discussed *infra,* the common thread in all of the Court's cases in which the *Pearce* presumption was not applied was that it was unlikely that this institu-

104, 116 (1972) (explaining that the *Pearce* presumption does not apply where there is no "hazard of being penalized for seeking a new trial").

tional bias, motive for self-vindication, or actual vindictiveness existed in the context in which the defendant was resentenced.

¶ 39. In *Colten v. Kentucky,* 407 U.S. 104, 114 (1972), the defendant argued that Kentucky's two–tier system for adjudicating less serious offenses violated the Due Process Clause under *Pearce* because he was subject to a higher sentence at his trial de novo. In analyzing the defendant's claim, the Court noted, "*Pearce* did not turn simply on the fact of conviction, appeal, reversal, reconviction, and a greater sentence." *Id.* at 116. The Court stated that the holding in *Pearce* was premised on "the hazard of being penalized for seeking a new trial." *Id.* The Court concluded that this hazard was not inherent in Kentucky's two-tier system such that unlike *Pearce,* the possibility of vindictiveness did not exist. *Id.* The Court reasoned:

> [T]he court which conducted [the defendant's] trial and imposed the final sentence was not the court with whose work [the defendant] was sufficiently dissatisfied to seek a different result on appeal; and it is not the court that is asked to do over what it thought it had already done correctly. Nor is the de novo court even asked to find error in another court's work. . . . We see no reason, and none is offered, to assume that the de novo court will deal any more strictly with those who insist on a [new] trial . . . than it would with those defendants whose cases are filed originally in [that court] . . . .

*Id.* at 116–17. Thus, the Court concluded that the *Pearce* presumption did not apply to defendants sentenced to harsher sentences under Kentucky's two-tier system. *Id.* at 118.[8]

¶ 40. Likewise, in *Chaffin,* 412 U.S. at 26, the Court reaffirmed that the *Pearce* presumption applies only when there is a "possibility of vindictiveness." The Court explained:

> *Pearce* was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process. The possibility of a higher sentence was recognized and accepted as a legitimate concomitant of the retrial process.

*Id.* at 25. The Court concluded that the *Pearce* presumption was inapplicable when a jury rendered a sentence to the defendant on retrial that was harsher than the original jury's sentence because the second jury was not aware of the sentence of the first jury, *id.* at 26, and the second sentence was "not meted out by the same judicial authority whose handling of the prior trial was sufficiently unacceptable to have required a reversal of the conviction." *Id.* at 27.

¶ 41. In *Blackledge,* 417 U.S. at 27, the Court extended the *Pearce* presumption to cover prosecutorial vindictiveness when a prosecutor brought a more seri-

---

[8] While the United States Supreme Court in *Colten,* 407 U.S. at 117–18, also emphasized that the record from the lower court was not before the superior court, the Court, as discussed *infra,* has subsequently ruled that the *Pearce* presumption is inapplicable under circumstances where the second court was aware of the first sentence and relied upon that first sentence as part of its sentencing determination.

ous charge against the defendant prior to his trial de novo after the defendant invoked his right to an appeal under North Carolina's two-tier appellate process. However, the Court stated that "[t]he lesson that emerges from *Pearce, Colten,* and *Chaffin* is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge,* 417 U.S. at 27. The Court reasoned that the *Pearce* rule should be extended in that case because the prosecutor had a personal stake in the permanency of the defendant's original conviction, an interest in discouraging defendants from appealing and obtaining a trial de novo, and the means to so discourage defendants. *Id.* at 27–28.

¶ 42. In *McCullough,* 475 U.S. at 135, the defendant was convicted of murder and tried before a jury. After the jury imposed a 20–year sentence, the trial court granted the defendant's motion for a new trial on the basis of prosecutorial misconduct. *Id.* at 136. The case was retried before a jury in front of the same judge. *Id.* After the jury again convicted the defendant, the trial judge sentenced the defendant to 50 years in prison. *Id.* The trial judge justified the increased sentence on the basis that testimony from two new witnesses who had not testified at the first trial strengthened the government's case regarding both guilt and punishment. *Id.* Also, the judge learned for the first time that the defendant had committed the crime only four months after being released from prison. *Id.*

¶ 43. The Court held that no presumption of vindictiveness arose in the case because:

> In contrast to *Pearce,* McCullough's second trial came about because the trial judge herself concluded that the prosecutor's misconduct required it. Granting

615

McCullough's motion for a new trial hardly suggests any vindictiveness on the part of the judge towards him. "[U]nlike the judge who has been reversed," the trial judge here had "no motivation to engage in self-vindication." In such circumstances, there is also no justifiable concern about "institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals." . . . Presuming vindictiveness on this basis alone would be tantamount to presuming that a judge will be vindictive towards a defendant merely because he seeks an acquittal. . . . We decline to adopt the view that the judicial temperament of our Nation's trial judges will suddenly change upon the filing of a successful post-trial motion. The presumption of *Pearce* does not apply in situations where the possibility of vindictiveness is this speculative. . . . Because there was no realistic motive for vindictive sentencing, the *Pearce* presumption was inappropriate.

*Id.* at 138–39 (quoting *Chaffin,* 412 U.S. at 27). In addition, the Court noted that the *Pearce* presumption was inapplicable because "different sentencers assessed the varying sentences that McCullough received," noting that "[i]n such circumstances, a sentence 'increase' cannot truly be said to have taken place." *Id.* at 140.[9]

---

[9] The Court in *McCullough* also stated that "[h]ere, the second sentencer provides an on-the-record, wholly logical, nonvindictive reason for the sentence. We read *Pearce* to require no more particularly since trial judges must be accorded broad discretion in sentencing." *McCullough,* 475 U.S. at 140. While this statement appears in the section of the opinion discussing why the *Pearce* presumption was inapplicable, it is unclear whether the Court intended this to be a separate basis for not applying the presumption in the first instance, a factor to be taken into consideration in determining whether the presump-

¶ 44.　In *Smith,* the defendant originally was sentenced pursuant to a plea bargain, but his sentence was subsequently vacated on the ground that the defendant had not knowingly and voluntarily entered into the plea. *Smith,* 490 U.S. at 795–96. The case was then tried before a jury with the judge from the initial sentencing presiding. *Id.* at 796–97. After the jury returned a verdict of guilty, the judge imposed a harsher sentence because the information developed at trial, relating to the nature of the crime and its impact on the victim, convinced the judge that the initial sentence was too lenient and an increase was justified. *Id.* at 797.

¶ 45.　The Court held that the *Pearce* presumption does not apply when the second sentence follows a trial and the first was based on a guilty plea, overruling *Simpson v. Rice,* 395 U.S. 711 (1969), the *Pearce* companion case. *Smith,* 490 U.S. at 795, 803. In doing so, the Court noted that "the *Pearce* presumption was *not designed to prevent the imposition of an increased sentence on retrial 'for some valid reason associated with the need for flexibility and discretion in the sentencing process,'* but was 'premised on the apparent need to guard against *vindictiveness* in the resentencing process.' " *Id.* at 799 (quoting *Chaffin,* 412 U.S. at 25) (first emphasis added). The Court reasoned that "the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial." *Id.* at 801. The Court noted that a judge who sentences after a full trial will usually be aware of more facts that bear on the "nature and extent of the crimes charged," *id.* at 801, and will

tion applies, or whether this fact merely supports the Court's subsequent conclusion in *McCullough* that even if the presumption applied, it was rebutted.

617

therefore possess a "greater amount of sentencing information" than the judge would at the time of the guilty plea. *Id.* at 803.

¶ 46. Moreover, the Court emphasized the fact that even if the same judge imposes both sentences in this context, the court is not being forced to do over what it thought it had previously done properly. *Id.* at 801–02. The Court distinguished *Pearce,* by noting that "[t]here, the sentencing judge who presides at both trials can be expected to operate in the context of roughly the same sentencing considerations after the second trial as he does after the first; any unexplained change in the sentence is therefore subject to a presumption of vindictiveness." *Id.* at 802. The Court concluded that when the first sentence follows a plea and the second follows a full trial, "there are enough justifications for a heavier second sentence that it cannot be said to be more likely than not that a judge who imposes one is motivated by vindictiveness." *Id.* at 802.

¶ 47. Applying these principles in *Church,* 262 Wis. 2d 678, ¶ 54, we held that the *Pearce* presumption applied when the defendant received a longer sentence from the same court after successfully challenging the validity of multiple convictions. We reasoned: "The appeal in this case posed a direct challenge to a decision of the circuit court. The circuit court's decision on multiplicity was reversed, the entire case was remanded, and the circuit court was essentially ' "do[ing] over what it thought it had already done correctly." ' " *Id.* (quoting *Smith,* 490 U.S. at 801 (quoting *Colten,* 407 U.S. at 117)).

¶ 48. However, the facts of the present case stand in stark contrast to those in *Church* and *Pearce.* Here, Naydihor moved for resentencing due to prosecutorial

618

error. The court before which he was sentenced granted his postconviction motion and ordered resentencing before a new judge. The State did not oppose the motion. Naydihor's conviction was not reversed because of an error by the court. In addition, it was the court itself that granted his motion. In other words, this is not a case where an appellate court reversed a conviction due to a circuit court error and the same circuit court that erred resentenced the defendant. The judge that resentenced Naydihor was not the same judge that originally sentenced him; nor was the resentencing court the court in which the error that led to resentencing took place. We conclude that under the facts of this case, consistent with *Chaffin, Colten, McCullough,* and *Smith,* no presumption of vindictiveness is warranted because the reasons justifying the prophylactic *Pearce* presumption are not present.

¶ 49. The defendant argues that unlike the scenario in *Chaffin,* the second sentencer here was aware of the previous sentence. However, *Chaffin* was not based solely on the fact that the second sentencer was unaware of the previous sentence. The *Chaffin* Court also reasoned that the *Pearce* presumption was inapplicable because "the second sentence [was] not meted out by the same judicial authority whose handling of the prior trial was sufficiently unacceptable to have required a reversal of the conviction." *Chaffin,* 412 U.S. at 27. *See also Colten,* 407 U.S. at 116 (explaining the fact that the second sentencer was not the court whose judgment was reversed was a significant factor justifying the nonapplication of the *Pearce* presumption).

¶ 50. More significantly, the Court in *McCullough* refused to apply the presumption *even though* the resentencing judge was aware of the initial sentence and arguably used the original sentence as a "baseline."

*McCullough,* 475 U.S. at 140 (noting the judge's appraisal of the first sentence as "unduly lenient" in light of new information "cannot be faulted"). *See also Smith,* 490 U.S. at 795, 797, 801–02 (explaining that the presumption of vindictiveness does not apply when a defendant is originally sentenced after pleading guilty and then resentenced after a subsequent trial, even when the same judge imposes both sentences).[10]

¶ 51. The Court in *McCullough,* 475 U.S. at 140, thus found the fact that there were two different sentencing authorities to be dispositive, even though the second authority was aware of the prior sentence. The *McCullough* Court specifically repudiated the argument that the *Pearce* presumption should be applied where there are two different sentencers:

> *Pearce* itself apparently involved different judges presiding over the two trials, a fact that has led some courts to conclude by implication that the presumption of vindictiveness applies even where different sentencing judges are involved. That fact however, may not have been drawn to the Court's attention and does not appear anywhere in the Court's opinion in *Pearce.* Clearly the Court did not focus on it as a consideration for its holding. Subsequent opinions have also elucidated . . . [that the basis for the *Pearce* presumption] derives from the judge's "personal stake in the prior conviction," a statement clearly at odds with reading *Pearce* to answer the two-sentencer issue.

---

[10] Thus, while the Court in *Chaffin,* 412 U.S. at 26, stated that "[t]he first prerequisite for the imposition of a retaliatory penalty is knowledge of the prior sentence," the Court has distanced itself from this statement in *Alabama v. Smith,* 490 U.S. 794 (1989) and *McCullough* by holding that the *Pearce* presumption was inapplicable in contexts where the resentencing judge had knowledge of the prior sentence.

*McCullough,* 475 U.S. at 140 n.3 (quoting *Chaffin,* 412 U.S. at 27) (citations omitted). The *McCullough* Court stated that where there are two different sentencers, "a sentence 'increase' cannot truly be said to have taken place." *Id.* at 140.

¶ 52. Similar to the Court in *McCullough,* we find it significant that Naydihor's two sentences were rendered by differing sentencing authorities and the resentencing "came about because the trial judge herself concluded that the prosecutor's misconduct required it." *Id.* at 138. Thus, "[the resentencing court] is not the court that is asked to do over what it thought it had already done correctly." *Colten,* 407 U.S. at 117. " '[U]nlike the judge who has been reversed,' the trial judge here had 'no motivation to engage in self-vindication.' " *McCullough,* 475 U.S. at 139 (quoting *Chaffin,* 412 U.S. at 27). As the *McCullough* court noted, it had previously clarified in *Chaffin* that the basis for the *Pearce* presumption originates from the judge's "personal stake in the prior conviction." *McCullough,* 475 U.S. at 140 n.3 (quoting *Chaffin,* 412 U.S. at 27). *See also Smith,* 490 U.S. at 800–02; *Goodwin,* 457 U.S. at 383. Here, it cannot be said that Judge Schroeder had a "personal stake" in the legitimacy of Judge Kluka's previous sentence. Therefore, "there was no realistic motive for vindictive sentencing." *McCullough,* 475 U.S. at 139.

¶ 53. However, Naydihor argues that there is a possibility for vindictiveness here because both sentencing judges were from the same county and it is reasonable to infer that the second court would be perturbed at having to repeat the sentencing process after a successful postconviction motion. As the Court stated in *McCullough,* "[w]e decline to adopt the view that the judicial temperament of our [state's] trial judges will suddenly change upon the filing of a suc-

cessful post-trial motion." *McCullough,* 475 U.S. at 139. To presume "vindictiveness on this basis alone would be tantamount to presuming that a judge will be vindictive towards a defendant merely because he seeks an acquittal." *Id.* Under *Goodwin,* "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Goodwin,* 457 U.S. at 384.

¶ 54. To paraphrase *Colten,* 407 U.S. at 117, there is no reasonable basis here to conclude that the court in which Naydihor was resentenced would deal any more strictly with him than it would if he were being sentenced before the court for the first time. Moreover, the fact that Naydihor was resentenced by a different judicial authority upon his request belies any assertion of the presence of "even 'apprehension of such a retaliatory motivation on the part of the sentencing judge.' " *McCullough,* 475 U.S. at 139 (quoting *Pearce,* 395 U.S. at 725). We agree with the State that it is significant that there was simply a resentencing here, not a complete retrial. Thus, "the institutional bias against the retrial of a decided question that supported the decisions in *Pearce* and *Blackledge* simply has no counterpart in this case." *Goodwin,* 457 U.S. at 383.

¶ 55. Finally, Naydihor argues that the *Pearce* presumption should apply because Judge Schroeder denied his motion for judicial substitution. However, we have found no case that even suggests the *Pearce* presumption may arise out of a failed motion for substitution. As noted *supra,* the *Pearce* presumption applies only where there is a reasonable likelihood that the second sentencer will have a motive to retaliate against the defendant for successfully challenging his

previous sentence. A failed substitution motion has no relevance in this analysis.[11]

¶ 56. Consistent with the approach taken by the United States Supreme Court, we hold that the *Pearce* presumption of vindictiveness does not apply here because the defendant was resentenced by a different judicial authority at his request due to a non-judicial defect at the original sentence hearing, and the resentencing was granted by the original court in which the defect occurred. In such circumstances there is "no realistic motive for vindictive sentencing," *McCullough,* 475 U.S. at 139, such that it can be said there was a "reasonable likelihood of vindictiveness," *Goodwin,* 457 U.S. at 373, much less a "possibility of vindictiveness." *Chaffin,* 412 U.S. at 26. As there was no hazard that Naydihor was being penalized for seeking enforcement of the terms of his plea bargain, the *Pearce* presumption does not apply to this case.

B

■■■■

¶ 57. Even if the *Pearce* presumption were to apply to this case, we conclude that the presumption was overcome because new information regarding the deteriorated condition of the crime victim constituted objective evidence of an event occurring after the initial sentence that provided a nonvindictive justification for the circuit court's imposition of a more severe sentence. This court has stated that "[t]he *Pearce* presumption of

---

[11] Also, we note that Naydihor merely attempted to exercise his statutory right to automatic substitution, pursuant to Wis. Stat. § 971.20(5). The motion was denied because it was untimely. Naydihor did not argue for common law disqualification on the grounds of bias.

vindictiveness can be overcome if 'affirmative reasons' justifying the longer sentence appear in the record and if those reasons are 'based upon objective information' regarding *events* or 'identifiable conduct on the part of the defendant' *subsequent to the original sentencing proceeding." Church,* 262 Wis. 2d 678, ¶ 55 (quoting *Pearce,* 395 U.S. at 726) (emphasis added).

¶ 58. The State argues that cases subsequent to *Pearce* have held that the *Pearce* presumption is overcome anytime a judge renders a harsher sentence based on an event or conduct of the defendant that occurs after the original sentencing and relates to legitimate sentencing factors. The State posits that the deteriorated condition of the victim qualifies as a legitimate "event" upon which a sentence increase may be justified. As the effect of the crime on the victim is a legitimate sentencing factor, the State concludes that a court may increase a sentence when the condition of the victim deteriorates between the original and subsequent sentence hearings.

¶ 59. Naydihor retorts that no case has held that the *Pearce* presumption is overcome when the victim's condition deteriorates, and that in any event, the victim's condition here was substantially the same as it was at the original sentencing. Naydihor argues that the condition of the victim does not constitute objective information of identifiable conduct on the part of the defendant that justifies a sentence increase. Naydihor further asserts that while a defendant may anticipate being given a harsher sentence because of some conduct on his part or an existing fact about him that has recently come to light, he has no way of anticipating that the condition of the crime victim may deteriorate after his original sentence. Therefore, according to

Naydihor, allowing an increased sentence based on this information would discourage defendants from challenging their pleas.

¶ 60. We begin by addressing Naydihor's contention that there was no appreciable change in the victim's condition. Naydihor argues that no change actually occurred because it was understood at the initial sentencing hearing that the effects of the crime on the victim would be ongoing, that she would require continued medical treatment, and that her medical bills would probably increase. However, the record contradicts this argument. At the initial sentencing hearing, the presentence report indicated that the victim sustained substantial leg injuries that could result in permanent disability and that she had incurred medical bills totaling $30,000.

¶ 61. At the second sentencing hearing the victim indicated that she was confined to a wheelchair and that she would "probably be in it forever." She also stated: "They are attempting to build a brace for my leg, but so far they haven't found anything that's going to help me walk." While the presentence report had previously indicated that the victim was unable to earn any income as a result of the accident, the victim now indicated that her medial bills had doubled and her insurance money from the accident had been depleted. The victim stated that she had undergone three major surgeries and was expecting more. Her medical bills at the time of the second hearing totaled over $70,000. We agree with Judge Schroeder that these facts represent a "monstrous increase in the enormity of the crime." Having determined that the victim's condition did significantly deteriorate since the original sentencing proceeding, we now examine whether this constituted a justifiable basis to increase Naydihor's sentence.

¶ 62. This court in *Church* held that the mere fact that the defendant had not sought treatment or expressed remorse for his crime after a length of time had passed between his original sentence and resentencing did not surmount the *Pearce* presumption because it did not constitute " 'objective information' of 'identifiable conduct on the part of the defendant' subsequent to the original sentencing." *Church,* 262 Wis. 2d 678, ¶ 56. However, this court did not address the issue presented in this case, namely, what qualifies as "objective information" of an "event" subsequent to the original sentence that would justify a sentence increase.

¶ 63. Admittedly, no United States Supreme Court decision has explicitly held that the deteriorated condition of a crime victim constitutes objective information of an event that would overcome the *Pearce* presumption. However, a close reading of the Court's decisions applying *Pearce* reveals that allowing a sentence to be increased on this basis would not violate due process. These decisions reveal that the focus of *Pearce* was not on the underlying behavior of the defendant; rather, the *Pearce* presumption was created to remedy the situation where a sentencing court did not explicitly set forth objective information justifying a sentence increase on the record. Thus, the *Pearce* presumption exists to force courts to provide on-the-record justification for sentence increases, so as to remove fear that courts will, out of vindictiveness, punish defendants for exercising their appellate rights.

¶ 64. The Court in *Wasman,* 468 U.S. at 572, clarified that information used to rebut the *Pearce* presumption is not limited to "conduct" of the defendant. The defendant in *Wasman* argued that his sentence was impermissibly enhanced because he was convicted of an additional offense after his initial sen-

tence, which was based upon conduct predating his first sentence. *Wasman,* 468 U.S. at 570. The trial judge did not consider the pending charge at the first sentence hearing, but did consider the subsequent conviction at the second hearing. *Id.* The defendant argued that under *Pearce,* his conviction was not "*conduct* on the part of the defendant occurring *after* the time of the original conviction." *Id.* (emphasis in original).

¶ 65. After noting that *Pearce* itself is unclear as to what may justify an increased sentence, the Court rejected the notion that "events" and "conduct" should be treated differently for the purposes of the *Pearce* analysis. *Id.* at 571–72 (noting that "[t]here is no logical support for a distinction between 'events' and 'conduct' of the defendant occurring after the initial sentencing insofar as the kind of information that may be relied upon to show a nonvindictive motive is concerned"). The Court concluded that "after retrial and conviction following a defendant's successful appeal, a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct *or events* that occurred subsequent to the original sentencing proceeding." *Wasman,* 468 U.S. at 572 (emphasis added).

¶ 66. *Wasman* further explained that "relevant conduct or events" are those related to sentencing discretion:

> Even without a limitation on the type of factual information that may be considered, the requirement that the sentencing authority or prosecutor detail the reasons for an increased sentence or charge enables appellate courts to ensure that a nonvindictive rationale supports the increase. A contrary conclusion would result in the *needless exclusion of relevant sen-*

627

*tencing information from the very authority in whom the sentencing power is vested.*

*Wasman,* 468 U.S. at 572 (emphasis added).

¶ 67. In addition, the Court explained: "If it was not clear from the Court's holding in *Pearce,* it is clear from our subsequent cases applying *Pearce* that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by *actual vindictiveness* toward the defendant for having exercised guaranteed rights." *Id.* at 568 (emphasis in original). *Wasman* emphasized that the *Pearce* presumption must be applied in light of the "underlying philosophy of modern sentencing" which is "to take into account the person as well *as the crime." Id.* at 572 (emphasis added). The Court also noted that "[t]he sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *Id.* at 563.

¶ 68. *Wasman* further elaborated that *Pearce* was chiefly concerned with *unexplained* sentence increases. *Wasman* noted that in *Pearce* the prosecutor did not attempt to justify the court's higher sentence on anything contained in the record; it merely asserted the court's " 'naked power to impose it.' " *Id.* at 565 (quoting *Pearce,* 395 U.S. at 726). Thus, in ruling that the *Pearce* presumption was rebutted in the case before it, the Court explained: "In sharp contrast to *Pearce* and *Blackledge,* however, the trial judge here carefully explained his reasons for imposing the greater sentence." *Wasman,* 468 U.S. at 569.

¶ 69. Like *Wasman, McCullough* indicated that *Pearce* primarily sought to remove the evil of unexplained increased sentences, noting, "[h]ere, the second

sentencer provides an on-the-record, wholly logical, nonvindictive reason for the sentence. We read *Pearce* to require no more, *particularly since trial judges must be accorded broad discretion in sentencing."* Mc-Cullough, 475 U.S. at 140 (emphasis added). *McCullough* also reaffirmed the holding in *Wasman* that a sentence increase may be based upon the defendant's conduct *or* events. *Id.* at 141. *McCullough* went even further than *Wasman* and stated, "[t]his language, however, was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified." *Id.* The Court then stated that "[r]estricting justifications for a sentence increase to *only* 'events that occurred subsequent to the original sentencing proceedings' could in some circumstances lead to absurd results." *Id.* (emphasis in original)(quoting *Wasman,* 468 U.S at 572).

¶ 70. Thus, *McCullough* held that the *Pearce* presumption could be rebutted by " 'objective information . . . justifying the increased sentence.' " *McCullough,* 475 U.S. at 142 (quoting *Goodwin,* 457 U.S. at 374).[12] The Court went on to state that "[n]othing in the Constitution requires a judge to ignore 'objective information . . . justifying the increased sentence.' . . . Realistically, if anything this focus would *require* rather than *forbid* the consideration of the relevant evidence bearing on sentence[.]" *McCullough,* 475 U.S. at 142 (quoting *Goodwin,* 457 U.S. at 374). The Court concluded that applying *Pearce* to prevent consideration of new pertinent sentencing information "would be wholly incompatible with modern sentencing standards." *Mc-*

[12] The Court has subsequently reiterated this formulation of how the *Pearce* presumption may be rebutted. *See Smith,* 490 U.S. at 799.

*Cullough,* 475 U.S. at 144.[13] Therefore, the Court concluded that new information concerning the nature and extent of the crime and the defendant's involvement therein constituted " 'objective information . . . justifying the increased sentence.' " *Id.* at 143.

¶ 71. We also note that the Court has squarely rejected Naydihor's "chilling effect" argument.

> Petitioner's final argument is that harsher sentences on retrial are impermissible because, irrespective of their causes and even conceding that vindictiveness plays no discernible role, they have a 'chilling effect' on the convicted defendant's exercise of his right to challenge his first conviction either by direct appeal or collateral attack. . . . *Pearce* . . . provides no foundation for this claim. To the contrary, the Court there intimated no doubt about the constitutional validity of higher sentences in the absence of vindictiveness despite whatever incidental deterrent effect they might have on the right to appeal.

*Chaffin,* 412 U.S. at 29.

¶ 72. Over ten years later, the Court again rejected this argument in *McCullough.*

> To be sure, a defendant may be more reluctant to appeal if there is a risk that new, probative evidence supporting a longer sentence may be revealed on retrial. But this Court has never recognized this "chilling effect" as sufficient reason to create a constitutional prohibition against considering relevant information in assessing sentences.

---

[13] Therefore, both *Wasman v. United States,* 468 U.S. 559 (1984) and *McCullough* represent a dramatic shift away from the original restriction in *Pearce* that the reasons for increasing a sentence must "be based upon objective information concerning identifiable conduct on the part of the defendant." *Pearce,* 395 U.S. at 726.

*McCullough*, 475 U.S. at 143.

¶ 73. As these cases illustrate, the *Pearce* presumption was designed to prevent judges from increasing a defendant's sentence following a successful appeal based on judicial vindictiveness. It was not designed, as Naydihor implies, to reward defendants for good behavior between the original sentence and resentencing. To that extent, *Pearce* and its progeny clearly require that any sentence increase must be based on objective information not known to the court at the initial sentencing that relates to legitimate sentencing factors and is explained on the record.

¶ 74. The Court has repeatedly stated that the Pearce presumption may be rebutted by " ' "objective information . . . justifying the increased sentence." ' " *Smith*, 490 U.S. at 799 (quoting *McCullough*, 475 U.S. at 142 (quoting *Goodwin*, 457 U.S. at 374)). This may be an actual intervening event set in motion by prior conduct on the part of the defendant, as in *Wasman*, 468 U.S. at 569–70, or new information concerning prior conduct of the defendant that relates to the nature and extent of the defendant's crime, as in *McCullough*, 475 U.S. at 143–44. While *McCullough* opened the door for increased sentences based on "new information" concerning the crime, it is clear under *Church*, 262 Wis. 2d 678, ¶¶ 56–57, that when the *Pearce* presumption applies, a resentencing court cannot use "old facts"—information that was available to the original sentencing authority—to justify an increase because presumably the first sentencer was aware of this information and took it into consideration in rendering the initial sentence.

¶ 75. In *Church* this court held that when the *Pearce* presumption is operative, a defendant's sentence

could not be increased because he continued to deny responsibility for the crime. *Church,* 262 Wis. 2d 678, ¶¶ 56–57. We reasoned:

> This does not constitute "objective information" of "identifiable conduct on the part of the defendant" subsequent to the original sentencing. It constitutes a subjective evaluation of the status of Church's rehabilitation at the time of resentencing, *based not on any new facts* but on the mere continued existence of the original facts.
>
> . . . To premise an increased sentence [on this basis] comes far too close to punishing the defendant for exercising his right to appeal.

*Id.* (emphasis added).

¶ 76. However, we recognized the possibility in *Church* that a court operating under the *Pearce* presumption could increase a sentence based on new facts or objective information "regarding events . . . subsequent to the original sentencing proceeding." *Id.,* ¶ 55 (citing *Pearce,* 395 U.S. at 726). As the facts in *Church* related to the defendant's conduct, we did not elaborate as to when a sentence could be increased based on objective facts concerning an "event" that occurs subsequent to the original sentencing. However, nothing in *Church* precludes a court from increasing a sentence based on new objective information of an event such as the victim's deteriorated condition, which occurs subsequent to the original sentencing.

¶ 77. We again reiterate that the United States Supreme Court in *McCullough* stated that *Pearce* "was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified." *McCullough,* 475 U.S. at 141. None of the

Court's decisions subsequent to *Pearce* have construed the phrase "objective information . . . justifying a sentence increase" to refer only to new conduct on the part of the defendant. Indeed, the Court in *McCullough* stated that a sentence increase could be justified based on "pertinent new information" that "bore legitimately on the appropriate sentence to impose." *McCullough,* 475 U.S. at 144. To summarize *Wasman, McCullough,* and *Church,* without using artificial labels or engaging in semantics, a sentence may be legitimately increased as a result of "any objective, identifiable factual data not known to the trial judge at the time of the original sentencing proceeding," *Pearce,* 395 U.S. at 751 (White, J., concurring in part), so long as that data relates to legitimate sentencing factors and is set forth clearly in the record. *See McCullough,* 475 U.S. at 153–55 (Marshall, J., dissenting) (noting that the majority opinion permits a sentence increase to be based on new information about the crime charged and removes the restriction that led to Justice White's concurrence in *Pearce*). Whether the basis for the sentence increase here is characterized as an event under *Wasman*[14] or

---

[14] Arguably, the fact situation presented here is within the array of justifiable sentence increases described in *Pearce* itself. In *Pearce,* the Court stated:

> A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's . . . conduct . . . . Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources.

*Pearce,* 395 U.S. at 723. When the condition of the crime victim has deteriorated between the first and second sentencing as a

new information about the nature and extent of the crime under *McCullough,* the fact that the condition of the victim deteriorated since the original sentence proceeding clearly constitutes a change in the status quo, something that was not present in *Church.* As discussed below, this change was clearly relevant to the sentencing factors Judge Schroeder was required to consider at resentencing.

██

¶ 78. As noted *supra,* the three primary sentencing factors that the court must consider are " '(1) the gravity and nature of the offense, *including the effect on the victim,* (2) the character and rehabilitative needs of the offender, and (3) the need to protect the public.' " *State v. Hall,* 2002 WI App 108, ¶ 7, 255 Wis. 2d 662, 648 N.W.2d 41 (quoting *State v. Spears,* 227 Wis. 2d 495, 507, 596 N.W.2d 375 (1999)) (emphasis added). Further, a court may consider the " 'vicious or aggravated nature of the crime.' " *Spears,* 227 Wis. 2d at 507 (quoting *State v. Harris,* 119 Wis. 2d 612, 623, 350 N.W.2d 633 (1984)). Also, the preamble to Wis. Stat. ch. 950, the victims' bill of rights, states: "the legislature declares its intent . . . that the rights extended in this chapter to victims . . . are honored and protected by . . . judges in a manner no less vigorous than the protections afforded to criminal defendants." Wis. Stat. § 950.01. Wisconsin Stat. § 950.04(1v)(m) provides crime victims the right to "provide statements concerning sentencing." More importantly, Wis. Stat. § 950.04(1v)(pm) provides crime victims the right to "have the court provided with information pertaining to the economic, physical and psychological effect of the crime upon the victim *and*

---

result of the initial criminal act, this qualifies as an "event[ ] subsequent to the first trial that . . . throw[s] new light upon the defendant's . . . conduct." *Id.*

*have the information considered by the court."* (Emphasis added.) *See also* Wis. Const. art. I, § 9m.

¶ 79. These rights would be rendered meaningless if a court at resentencing was prohibited from considering the deteriorated condition of the crime victim in rendering its sentence. Otherwise, § 950.04(1v)(pm) might as well read that the victim of the crime has the right to have the information considered by the court, *unless the accused is being resentenced.* Holding that a circuit court could not render a harsher sentence based on the deteriorated condition of the crime victim "would result in the needless exclusion of relevant sentencing information from the very authority in whom the sentencing power is vested." *Wasman,* 468 U.S. at 572. We also observe that the United States Supreme Court has specifically concluded, in the death penalty context, that victim impact evidence is "relevant sentencing information."

> Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities. . . .
>
> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant.

*Payne v. Tennessee,* 501 U.S. 808, 825 (1991).

¶ 80. We hold that when a victim testifies at resentencing that her condition has deteriorated since the original sentencing proceeding as a result of the defendant's underlying criminal act, this constitutes " 'objective information . . . justifying the increased sen-

tence.' " *McCullough,* 475 U.S. at 143. As Judge Schroeder specifically stated that this was the basis for increasing Naydihor's sentence, he provided "an on-the-record, wholly logical, nonvindictive reason for the sentence. We read *Pearce* to require no more, particularity since trial judges must be accorded broad discretion in sentencing." *Id.* at 140.

V

¶ 81. To summarize, we hold that the prosecutor did not breach the plea agreement at resentencing and thus Naydihor was not entitled to a *Machner* hearing on his ineffective assistance of counsel claim. We also hold that the *Pearce* presumption of vindictiveness did not arise in this case. We further hold that even if the *Pearce* presumption did apply it was overcome because the victim's testimony concerning her deteriorated condition constituted " 'objective information . . . justifying the increased sentence.' " *Id.* at 143. As such, Naydihor's due process rights were not violated by the imposition of the second sentence.

*By the Court.*—The decision of the court of appeals is affirmed.