COURT OF APPEALS
DECISION
DATED AND FILED

September 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1209-CR**

Cir. Ct. No. **2018CF1683**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SAMUEL S. MATTIOLI,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: JILL KAROFSKY, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Samuel Mattioli appeals a judgment of conviction and an order denying his postconviction motion.   Mattioli contends that the prosecutor breached the plea agreement that called for a joint sentencing recommendation, and that his counsel was ineffective by failing to object to the breach.  He argues that he is entitled to resentencing on that basis.  For the reasons set forth below, we conclude that the prosecutor did not breach the plea agreement.  We affirm.

¶2     Mattioli was charged with two counts of second-degree sexual assault and one count of sexual assault of a child under sixteen years of age based on three separate incidents with three separate victims.   Pursuant to a plea agreement, Mattioli pled guilty to an amended count of third-degree sexual assault, and the other two charges were dismissed and read in for sentencing purposes.   Under the plea agreement, the parties agreed to jointly recommend a sentencing disposition of twelve months in jail, and, further, that Mattioli would be required to register as a sex offender for fifteen years.[1]  After the parties made their sentencing arguments, the court rejected the joint sentencing recommendation and imposed two years of initial confinement and five years of extended supervision.

¶3     Mattioli moved for resentencing.   He argued that the prosecutor breached the plea agreement by making sentencing arguments that supported a longer sentence than the joint recommendation, and that his counsel was ineffective for failing to object to the breach.  After a hearing, the circuit court

---

[1] The parties originally agreed to jointly recommend probation with each party free to argue as to conditional jail time.  At sentencing, the parties informed the court they had reached a new joint sentencing recommendation for a jail term of twelve months.

found that the prosecutor did not breach the plea agreement and therefore denied Mattioli's motion. Mattioli appeals.

¶4 Because Mattioli did not object to the prosecutor's sentencing comments, we review the alleged breach of the plea agreement under the rubric of ineffective assistance of counsel. *See State v. Naydihor*, 2004 WI 43, ¶¶7-9, 270 Wis. 2d 585, 678 N.W.2d 220. To establish ineffective assistance of counsel, a defendant must prove both deficient performance by counsel and prejudice resulting from that deficient performance. *See State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. The threshold question we address is whether the prosecutor breached the plea agreement such that trial counsel's performance was deficient due to the failure to object. *Id.*, ¶58 (failure to make a sufficient showing on either prong of ineffective assistance of counsel claim is dispositive).

¶5 A defendant has a constitutional right to enforcement of a plea agreement. *State v. Williams*, 2002 WI 1, ¶37, 249 Wis. 2d 492, 637 N.W.2d 733. "A prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement." *Id.*, ¶38. Moreover, a prosecutor "'may not render less than a neutral recitation of the terms of a plea agreement'" so as to "covertly convey to the trial court that a more severe sentence is warranted than that recommended." *Id.*, ¶¶42, 43 (quoted source omitted). A defendant must establish a substantial and material breach by the prosecutor, that is, a violation of the agreement that defeats the defendant's benefit of the bargain. *Id.*, ¶38. Whether a prosecutor's sentencing remarks breached the plea agreement is a question of law that we review de novo. *Naydihor*, 270 Wis. 2d 585, ¶11.

¶6 Mattioli argues that the prosecutor breached the plea agreement by interjecting his personal opinions about Mattioli's character, covertly conveying to

the circuit court that a more serious sentence than the joint recommendation of twelve months in jail was warranted. He points to the following comments, which he characterizes as "pejorative and irrelevant personal opinions" that "addressed none of the sentencing factors and can only be seen as undercutting the joint recommendation":

> I think [the assault described by one of the victims] speaks to the dehumanization of ... the defendant's conduct and his attitude towards [the victim].
>
> ....
>
> [The lack of relationship between Mattioli and his victims beforehand, Mattioli's conduct, and the victims' reactions] all speak to the gravity of these offenses, and I think they demonstrate the predatory nature of the defendant's behavior and the resulting pain and suffering that … he's caused to these victims.
>
> ....
>
> Starting with the numbers -- the fact that there were not only three victims in this case, but three different denials by the defendant -- especially to law enforcement with no sign ... of apology or remorse -- I don't think it speaks very well of the defendant's character.
>
> ....
>
> I think [that] reflect[s] the defendant's tendency to either blame the victim or deflect or rationalize his behavior. .... He says, quote, "please try to talk to her," end quote, and I think that reflects someone who's immediately trying to influence the victim and put pressure on her.
>
> In another text, he said, quote: "this is ridiculous. I'm done explaining. Nothing happened," end quote. I think that reflects a lack of acceptance of responsibility.
>
> ....
>
> He lied about smoking marijuana. I don't think that reflects a very good character for truthfulness. He describes the incident -- the assault, rather, of [one of the victims] as being a lot of making out, which I think minimizes his conduct.

....

I don't think that reflects ... a very good character for acceptance of responsibility and trying to understand the feelings ... of your victims.

....

And I think, perhaps, it was awkward, Judge, because it was assault rather than consensual sexual activity, but I think it demonstrates a rather flippant attitude towards sexual activity, which is concerning.

....

I think that this suggests rather illogical thinking on the part of the defendant, and I think it also suggests that it's somehow [one of the victim's] fault -- what he did to her.

And, again, I don't think that lying again about things like drinking reflect very well on the defendant's character for truthfulness. When he explained the sex at that point, he said, quote, "she was having a blast," end quote. And when Detective Wiza asked how did he know that, he replied that she wasn't dead. I think that's a rather dehumanizing response about a person that you claim to be having consensual sexual activity with.

....

Even if that's true, it really has nothing to do with whether or not [the victim] consented to the sexual assault, and I don't think it reflects very well on the defendant's manner of thinking.

....

I think it's also notable -- that he was not just having a beer or two but is reported to have been consuming hard alcohol in excessive amounts. I think that it -- at a minimum, it reflects a lack of self-control and poor judgment.

....

I think that's consistent with the defendant's apparent unwillingness to accept responsibility ... and, for example, say that [the victim] was really enjoying it or really wanted it.

> I think that also speaks to the defendant's rather sporadic character.
>
> ....
>
> And I think that's very, very concerning, and I think it's part of the reason that he needs to be incarcerated for the next year.
>
> ....
>
> I think it shows a willingness to repeat the conduct with different people even over a limited period of time.

¶7    Mattioli contends that, because the parties had reached a stipulated sentencing recommendation with nothing left to argue, the prosecutor's negative personal opinions served no purpose other than to convey that the prosecutor believed a more serious sentence was warranted.  He argues that the prosecutor's personal opinions were inflammatory and created the impression that the prosecutor was arguing against the negotiated plea agreement, citing *Williams*, 249 Wis. 2d 492, ¶48 ("The prosecutor's declaration of her personal opinion created the impression that the prosecutor was arguing against the negotiated terms of the plea agreement.").

¶8    According to Mattioli, the prosecutor then made explicit that the State was recommending a longer sentence than the joint recommendation by arguing as follows:

> To conclude, Judge, I'm asking the Court to impose a sentence that will keep these victims safe, keep the defendant away from them so that they might find peace. I'm asking the Court to pronounce a sentence that will protect the rest of the female population here in Dane County; less we forget that we are a university community with many young and vulnerable female students.
>
> I think the defendant needs to be removed from our community for a -- significant period of time; and for someone who's never been incarcerated before, a year in the Dane County Jail is no picnic and certainly no short

> period of time. I think we should all be concerned about the defendant's conduct in the future if he is not specifically deterred right now and … if this thinking doesn't change in the future. So for those reasons, Judge, I'm asking the Court to adopt this recommendation.

¶9 Mattioli argues that the prosecutor's arguments in this case are akin to the prosecutor's arguments that breached the plea agreement in *United States v. Heredia*, 768 F.3d 1220 (9th Cir. 2014). In *Heredia*, the plea agreement called for the government to recommend a sentence at the low end of the federal sentencing guidelines. *Id.* at 1228. The Ninth Circuit concluded that the government breached the plea agreement at sentencing "through its repeated and inflammatory references to Morales's criminal history." *Id.* at 1232. The court explained that "all of the aggravating factual information [provided by the government] had already been provided to the district court," and that "there was no reason to believe that the district court was considering imposing a sentence less harsh than the stipulated one." *Id.* The court explained that, "given the opportunity to argue for the low-end sentence it had promised to recommend, the government offered a series of prejudicial 'statements related to the seriousness of the defendant's prior record.'" *Id.* (quoted source omitted). The court concluded: "The central theme of the government's sentencing position was that Morales was a dangerous recidivist who had spent twenty years flouting the law and menacing others. Whether intentional or not, the government breached the plea agreement by implicitly recommending a higher sentence than agreed upon." *Id.* at 1232-33. The court determined that, by the government's breach, Morales was denied the "united front" at sentencing that was his benefit of the bargain. *Id.* at 1231.

¶10 Mattioli argues that here, as in *Heredia*, there was no reason to believe that the circuit court was considering imposing a lesser sentence than the recommended one. He points to the court's statements at the beginning of the

sentencing hearing that it was surprised by the joint sentencing recommendation for a jail sentence without any period of post-confinement supervision in the community. Mattioli contends that, by expressing surprise at the recommendation, stating that the parties "may be able to persuade me otherwise," and then reiterating that the recommendation struck the court as "a very, very light sentence," the court made clear that it was not considering imposing a lesser sentence than recommended. Mattioli argues that the prosecutor failed to address the court's concern regarding lack of supervision, and that the clear omission implied that the State did not stand by the joint recommendation. According to Mattioli, the State provided lip service to the agreement while clearly arguing for a harsher sentence.

¶11 The State responds that the facts of *Williams* and *Heredia* are distinguishable. It argues that here, the prosecutor followed the plea agreement by presenting the joint sentencing recommendation to the circuit court and then repeatedly confirming that the State was asking the court to impose that exact sentence. The State highlights the following comments by the prosecutor: "I think that the next year in jail followed by 15 years of sex offender registry is an appropriate sentence for this individual"; "[Mattioli] needs to be incarcerated for the next year"; and "a year in jail is no picnic and certainly no short period of time." The State points out that the prosecutor then concluded by stating: "So for those reasons, Judge, I'm asking the court to adopt this recommendation."

¶12 The State takes issue with Mattioli's assertion that the prosecutor breached the plea agreement by asking the court to remove Mattioli from the community for "a significant period of time." According to the State, the prosecutor's comment was an argument in favor of the joint recommendation—the prosecutor expressly clarified that he meant twelve months, and argued that for

Mattioli, twelve months is "no short period of time." The State contends that the prosecutor was explaining why the State believed a jail term, rather than an imposed and stayed sentence, was appropriate. The State argues that, because the parties had agreed to recommend a sentence above the minimum, the prosecutor was required to give the court reasons to impose twelve months in jail rather than a shorter term. The State contends that the prosecutor's comments on how the prosecutor thought the facts of the case reflected on Mattioli's character, even if unnecessary, did not materially and substantially breach the plea agreement.

¶13 We conclude that the prosecutor's statements at sentencing did not breach the plea agreement. The prosecutor gave an opinion as to how the facts of the case reflected negatively on Mattioli's character in the context of arguing that twelve months of incarceration was warranted. As the State concedes, the prosecutor's comments may have been "unnecessary." However, we cannot say that, as a matter of law, they crossed the line to a material and substantial breach of the plea agreement.

¶14 We disagree with Mattioli that the prosecutor's stated opinions of Mattioli's character were irrelevant and served only to undercut the plea agreement. Contrary to Mattioli's argument, the prosecutor did not engage in the conduct described in *Williams*, 249 Wis. 2d 492, ¶48, where the prosecutor "personalize[d] the information, adopt[ed] the same negative impressions as [the author of the presentence investigation report] and then remind[ed] the court that the [author] had recommended a harsher sentence than [the parties] recommended." Here, the prosecutor did not reference a lengthier sentence recommendation and then adopt the opinions underlying that recommendation as the prosecutor's own. Rather, the prosecutor referenced the facts of the case and stated how the prosecutor believed those facts reflected on Mattioli's character in

9

the context of arguing why the State believed the court should impose twelve months in jail. In contrast to *Williams*, where the prosecutor's comments were unnecessary to support the agreement to recommend the minimum sentence of probation, the prosecutor here had to explain why twelve months of jail was necessary, as opposed to a shorter jail term.[2] In *Williams*, we noted that the facts presented "a close question." *Id.*, ¶52. Here, the facts are not so close, and the prosecutor's negative opinions as to Mattioli's character did not serve only to undercut the plea agreement.[3]

¶15 We also are not persuaded that *Heredia* compels a different result. Unlike *Heredia*, 768 F.3d at 1223, the prosecutor in this case did not "extend[] the promise of a reduced prison term with one hand and [take] it away with the other." In *Heredia*, "[t]he prosecutor's recommendation of a six-month prison term rang hollow as he repeatedly and unnecessarily emphasized Morales's criminal history, adding for good measure his personal opinion that 'defendant's history

---

[2] We acknowledge Mattioli's contention that the prosecutor's comments were unnecessary in light of the circuit court's statements indicating that it did not intend to impose a lesser sentence than the recommended one. Nonetheless, the prosecutor was required to explain why twelve months of incarceration was appropriate, as opposed to a lesser disposition.

[3] In his reply brief, Mattioli argues that prior cases concluding that a prosecutor's negative comments at sentencing did not breach the plea agreement have relied on the lack of a joint sentencing recommendation. *See*, *e.g.*, *State v. Naydihor*, 2004 WI 43, ¶30, 270 Wis. 2d 585, 678 N.W.2d 220 (prosecutor's negative comments did not breach the plea agreement because the State was free to argue length and conditions of probation, and sentencing comments were necessary to support State's recommendation of "a lengthy period of probation with very extensive conditions"). However, Mattioli does not cite any authority for the proposition that a prosecutor is permitted to give a personal opinion as to the defendant's negative characteristics *only* if the plea agreement does not include a joint sentencing recommendation. Indeed, case law holds that "the State may discuss negative facts about the defendant in order to justify a recommended sentence within the parameters of the plea agreement" and "permits the State to discuss aggravating sentencing factors and relevant behavioral characteristics of the defendant in order to justify an unusual sentence recommendation within the constraints of the plea agreement." *Id.*, ¶¶24, 25.

communicates a consistent disregard for both the criminal and immigration laws of the United States.'" ***Id.*** (quoted source omitted). Here, by contrast, the prosecutor argued that the joint recommendation of twelve months in jail was warranted, as opposed to probation or a shorter jail term, based on the facts of this case and how the prosecutor believed those facts reflected on Mattioli's character. The prosecutor did not agree to argue for a "reduced" sentence, yet posit that Mattioli had a criminal history that communicated a consistent disregard for the laws of the United States. The facts in ***Heredia*** are distinguishable on that basis.

¶16    We conclude that, here, the prosecutor's comments are more accurately interpreted as providing justification for the recommended sentence, as opposed to suggesting that a more severe penalty was warranted. We therefore conclude that the prosecutor did not breach the plea agreement.[4] We affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

---

[4] Because we conclude that the prosecutor did not breach the plea agreement, we need not reach the parties' arguments as to whether trial counsel was ineffective by failing to object to a purported breach.