STATE of Wisconsin, Plaintiff-Respondent,

v.

Aaron L. WOOD, Defendant-Appellant.

Court of Appeals

*No. 2012AP1808–CR. Submitted on briefs March 21, 2013. —Decided June 12, 2013.*

2013 WI App 88

(Also reported in 835 N.W.2d 257.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Byron C. Lichstein* and *Mary B. Hoynacki* of *Frank J. Remington Center, Univ. of Wisconsin Law School*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J.   Aaron L. Wood seeks resentencing on the grounds that the plea agreement he entered into with the State was materially and substantially breached by the prosecutor's comments at sentencing and that his counsel was ineffective in failing to object to those comments. Because we conclude that the prosecutor's comments did not materially and substantially breach the plea agreement and, therefore, Wood's counsel was not ineffective in failing to object, we affirm.

## BACKGROUND

¶ 2.   At age nineteen, Wood sexually assaulted his cousin's fourteen-year-old friend during a sleepover at the home where Wood resided. As a result, he was charged with one count of child enticement and one count of second-degree sexual assault of a child under sixteen years of age. Pursuant to a plea agreement, Wood pled guilty to one count of third-degree sexual assault and the State agreed to recommend probation with the prosecutor free to argue as to the length and conditions of probation.

¶ 3.   Following Wood's plea, the circuit court ordered that a presentence investigation report (PSI) be prepared. The PSI included information relating to prior sexual transgressions by Wood and recommended two to three years of confinement in prison followed by three to four years of extended supervision.

399

¶ 4. At Wood's sentencing, the prosecutor remarked as follows:[1]

> Your Honor, while there are no factual errors that I'm aware of in the presentence, there are a number of alarming things which I learned about the defendant in reading this presentence. The crime in front of us, he's convicted, his first time in adult court, of the felony sexual assault of a 14 year old girl. He has changed her life in ways that are not for the better. A bit of an understatement on my part, but that's laid out better than I could in the letters that the Court has received from the victim and from the victim's own mother.
>
> This appears to be in some ways a pattern based on what is in the defendant's presentence report. It's a pattern of opportunistic—not necessarily predatory, but opportunistic criminal sexual behavior. It shows a poor understanding of appropriate boundaries. It shows a willingness to use manipulation, psychological coercion perhaps, but not physical violence or the threat of violence, in sexual encounters with other people.
>
> As I said, there's a number of alarming things that came to my attention as I read the presentence and those are beginning on page 4. This I had been previously aware of, this incident with [E.], who was the defendant's stepbrother. The defendant was on juvenile probation out of the state of Illinois. His stepbrother who he was six years older than, he committed this offense when he was—the was defendant 15 years old. That's the same age gap between the defendant and the victim in this case . . . .
>
> The defendant in this incident with [E.] admits, in addition to other sexually motivated behavior, attempt-

---

[1] We consider the prosecutor's entire sentencing arguments. *See State v. Naydihor*, 2004 WI 43, ¶ 13, 270 Wis. 2d 585, 678 N.W.2d 220; *State v. Williams*, 2002 WI 1, ¶¶ 26, 46, 249 Wis. 2d 492, 637 N.W.2d 733.

ing to put his penis inside [E.'s] butt. The defendant claims that this only happened one time. [E.] had reported that it happened two times.

The PSI writer notes on page 5 that the defendant's juvenile probation was not revoked out of Illinois because of what is inferred to be the delay in charging in this case. I'd note that this case was not reported to law enforcement until May of 2010. That facts are what they are, but the state would not have had any notice of these charges, any ability to have charged them while the defendant was still on that juvenile probation.

Additionally, I was concerned reading on page 7, which details . . . a psychosexual evaluation that was completed as part of the juvenile probation, the second full paragraph, the second sentence, a psychosexual evaluation reported the defendant had put his hand down his stepsister's shirt and pants in an attempt to fondle her. A few sentences down . . . quote, it was also noted that the defendant had held his stepsister down on at least one occasion so that others could fondle her. He denied this particular behavior, but this came from somewhere in the psychosexual evaluation.

Fortunately, the defendant has not fathered any children. Page 9 of the presentence . . . it was later learned the defendant had also been suspended from school after he was found with a female student in a[, q]uote[,] compromising position. The PSI elaborates. The defendant explained he was receiving oral sex from the girl in one of the classrooms at school.

I had additional concerns reading page 12 of the [p]resentence . . . . [A]gain talking about the psychosexual evaluation from January of 2008, the defendant disclosed to staff at the treatment facility that he had engaged in sex with a younger female cousin over the course of about a year when he was 12 or 13 and she was nine or 10, again taking advantage of an age difference between himself and the female, his cousin.

401

He reportedly told staff both he and his cousin had watched other people, particularly other friends and his aunts having sex, and he asked her if she wanted to try it. Over the course of the next year he and his cousin reportedly engaged in vaginal and anal sex.

Moving on, the defendant admitted to having penis to vagina sex with his cousin, [S.W.], on one occasion. That was not clear to me from this paragraph whether [S.W.] is the victim referred to at the beginning of the paragraph, a younger female cousin, if this is a reference to two victims or one victim. In any event, it is concerning behavior.

Page 12 . . . the psychosexual evaluation came to the conclusion the defendant was determined to have a moderate to high risk to reoffend in a sexual manner. Unfortunately, the evaluator was correct in that the defendant now comes on for sentencing for reoffending in a felony sexual manner. The conclusions of the evaluator that continue into page 13 seem to be accurate. The evaluator reported the defendant, quote, does not demonstrate good boundaries with family members, sees them as possible sex partners, and may not understand the problems with coercion and manipulation.

He's appears to have owned up to his responsibility in this case. He states that he initiated this behavior. There are continuing discrepancies between the extent of what he admits to and what has been reported by the victim.

The state does believe that lifetime sex offender registration would be appropriate and necessary to protect the public. This is a felony sexual offense. This is a man who's previously been on probation as a juvenile for sexual assault.

The state also believes that the Court should order a DNA sample, require that the defendant pay the sur-

charge for that sample. My reason for this request is that sex crimes are frequently solved or corroborated by the use of DNA evidence and so it would be appropriate for this defendant to submit a DNA sample and to pay that surcharge.

Furthermore, the state is going to recommend a year of conditional time, five years of supervision in the form of probation, would ask that he not have credit for the conditional time. But in the event that he were to be revoked on probation, I calculate that he would have 188 days credit.

I believe that recommendation is appropriate given the prior record, both that which exists and that which doesn't exist, in that this defendant has not previously been in an adult criminal court. It's appropriate because of the gravity of the offense, the impact that it's had on the victim. It's appropriate to address treatment needs that he has himself and to provide a punitive element which can be served by a period of incarceration. Thank you, judge.

¶ 5.   At no time did Wood's counsel object. In his sentencing remarks, Wood's counsel pointed out multiple mitigating factors and requested that the court follow the prosecutor's recommendation of probation, but with no jail time. When Wood's counsel argued that Wood had twelve more days of jail credit due to time during extradition, for a total of 200 days, the prosecutor responded:   "I would stipulate to 200 days." The circuit court sentenced Wood to serve three years of initial confinement with five years of extended supervision, register as a sex offender for life, submit and pay for a DNA sample, and pay restitution and court costs.

¶ 6.   Represented by new counsel, Wood moved for resentencing, arguing that the prosecutor's comments at sentencing constituted a material and substantial

breach of the plea agreement and that Wood's counsel was ineffective in failing to object. After a hearing at which Wood's sentencing counsel testified, the circuit court concluded that the State did not breach the plea agreement and, therefore, Wood's counsel was not ineffective in failing to object. Wood appeals, raising the same issues as below. Additional facts shall be set forth as necessary.

## DISCUSSION

██ ¶ 7. If the State materially and substantially breaches a plea agreement, a defendant may be entitled to vacation of the agreement or resentencing. *State v. Williams*, 2002 WI 1, ¶ 38, 249 Wis. 2d 492, 637 N.W.2d 733. Where, as here, there is no dispute regarding the terms of the agreement or the State's conduct allegedly constituting a breach of it, we consider only whether the State's conduct constituted a breach and whether that breach was material and substantial, questions of law we review de novo. *See State v. Naydihor*, 2004 WI 43, ¶¶ 11, 13, 270 Wis. 2d 585, 678 N.W.2d 220; *Williams*, 249 Wis. 2d 492, ¶ 2.

¶ 8. Wood does not claim that any of the sentencing recommendations the State made to the court were inconsistent with the terms of the plea agreement.[2] Rather, he argues that "[b]y expressing alarm and concern at what he discovered in the PSI after the plea agreement was made, and highlighting all the negative

---

[2] In his brief-in-chief, Wood states that the prosecutor "technically stated the agreed-upon recommendation," and in his reply brief Wood provides no retort to the State's comment in its response brief that the prosecutor "followed the plea agreement to the letter."

portions of the PSI, [the prosecutor] undercut the agreed-upon recommendation." We disagree.

¶ 9. At sentencing, "[t]he State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." *Williams*, 249 Wis. 2d 492, ¶ 42 (citations omitted). That said, the State also cannot agree to keep relevant information from the sentencing judge. *Id.*, ¶ 43. As such, the State walks a "fine line" in balancing "its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement." *Id.*, ¶ 44 (citation omitted).

¶ 10. Wood analogizes his case to *Williams*, in which the supreme court concluded that the prosecutor's sentencing comments undercut, and thereby materially and substantially breached, the plea agreement. *Id.*, ¶¶ 46, 59. The case before us is easily distinguished from *Williams*. In *Williams*, the supreme court was troubled by the prosecutor's apparent adoption of the PSI author's negative impressions of the defendant as her own impressions and then (twice) reminding the court that the PSI author had recommended a harsher sentence. *Id.*, ¶¶ 26, 48. The court was concerned that the prosecutor expressed her own negative personal opinion of the defendant in such a way that it created the impression that she was arguing against the negotiated terms of the agreement. *Id.* The court indicated that the impression that the State was "backing away" from the plea agreement was further enhanced by the fact that the prosecutor began her sentencing remarks by stating, "When Mr. Williams entered his plea . . . we had told the Court that we *would be* recommending . . . that he be placed on pro-

405

bation . . . ." *Id.*, ¶ 49. The *Williams* court concluded that "[t]he words 'would be' intimate[d] that a change of the State's plans would be revealed." *Id.*

¶ 11.  While the prosecutor in this case did express "alarm[]" and "concern[]" regarding information he "learned" in reading the PSI,[3] he highlighted for the court relevant factual information from the PSI without suggesting he was adopting any impression of the PSI author as his own or interjecting his own negative personal opinion of Wood to create the impression the State was backing away from the plea agreement. Significantly, at no time did the prosecutor mention the harsher sentence recommended by the PSI author. *See Naydihor*, 270 Wis. 2d 585, ¶ 29 (distinguishing *Williams* in part due to the fact the prosecutor in *Naydihor* made no mention of the PSI's sentence recommendation). And when the prosecutor articulated the State's recommendation, he did so without equivocation, clearly explaining why the recommendation was appropriate in light of the record before the court. We do not read the prosecutor's comments as sending or attempting to send a covert message that the court should disregard the plea agreement and sentence Wood in a more severe manner than the State was actually recommending.

¶ 12.  Wood complains that the prosecutor "highlight[ed] all the negative portions of the PSI," yet fails

_____

[3] Since PSI's are generally, by statute, prepared after a conviction, new information about a defendant no doubt routinely comes to light after a plea agreement has been made and a plea has been entered. *See* WIS. STAT. § 972.15(1), (2) (2011–12) ("After a conviction the court may order a presentence investigation . . . . When a presentence investigation report has been received the judge shall disclose the contents of the report to the defendant's attorney and to the district attorney prior to sentencing.").

to identify any positive portions he believes the prosecutor should have highlighted. Further, Wood has identified no case holding that, to avoid breaching a plea agreement, the State is required to make positive comments about the defendant. *See Naydihor*, 270 Wis. 2d 585, ¶ 30 ("[W]e have found no case that holds that the State is obligated to say something nice or positive about the defendant in order to avoid breaching a plea agreement."). More importantly, the prosecutor appears to have been fair and measured in his comments. Both at the beginning of his sentencing remarks and at the end, the prosecutor pointed out that this was Wood's first time in adult court. The prosecutor also remarked that, while Wood had developed a pattern of opportunistic sexual behavior, it was "not necessarily predatory," and that, while the pattern demonstrated a willingness by Wood "to use manipulation, psychological coercion perhaps," it did "not [involve] physical violence or the threat of violence." And, while the prosecutor noted there were discrepancies between Wood's version of events in the underlying case and the victim's version, he expressed to the court that Wood "appears to have owned up to his responsibility in this case. He states that he initiated this behavior."

■

¶ 13.  The prosecutor's comments at sentencing were appropriate in light of the sentence he was recommending, which included a lengthy period of probation and a year of confinement, and did not constitute a covert attempt to convey to the court that a more severe sentence was warranted than that recommended. Thus, the State's comments did not breach the plea agreement, much less materially and substantially breach it, and Wood's counsel was not ineffective in failing to object. *See id.*, ¶ 9 ("If the State did not breach the plea

agreement, then the failure of [defense] counsel to object did not constitute deficient performance."). Wood is not entitled to resentencing.

*By the Court.*—Judgment and order affirmed.