COURT OF APPEALS
DECISION
DATED AND FILED

March 1, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1350-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF546

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEREMY JOSEPH HAMILTON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County: DANIEL J. BOROWSKI, Judge. *Affirmed*.

¶1 GUNDRUM, P.J.[1] Jeremy Joseph Hamilton appeals from a judgment of conviction, entered upon his no-contest plea, and an order denying his

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

motion for postconviction relief. Hamilton contends the circuit court erred in denying his postconviction motion; more specifically, he asserts the State breached the plea agreement by comments it made at the sentencing hearing and his trial counsel rendered ineffective assistance by failing to object to the breach. For the following reasons, we conclude there was no breach, and thus, his counsel did not perform ineffectively, and the court did not err in denying his postconviction motion. We affirm.

## *Background*

¶2 Hamilton was charged with felony intimidation of a victim, strangulation/suffocation (domestic abuse), and disorderly conduct (domestic abuse), all as a repeater. He decided to plead based upon an agreement with the State. The terms of the agreement, which were put on the record at the plea hearing, were that the intimidation charge would be dismissed and read in, the strangulation/suffocation charge would be amended to misdemeanor battery (domestic abuse) as a repeater, and the disorderly conduct (domestic abuse) charge would remain as charged. As part of the agreement, the State agreed to recommend an imposed and stayed sentence of two years of initial confinement followed by two years of extended supervision, with Hamilton being placed on probation for three years "with standard conditions," "consecutive to any other sentence." Hamilton would be free to argue for whatever sentence he wished. Hamilton pled as indicated.

¶3 The sentencing hearing immediately followed the plea, and the State asked the circuit court "to follow the recommendation in this case." The prosecutor noted that while Hamilton was on extended supervision at the time of the events underlying this case, "[h]e was not revoked for this case." The

prosecutor indicated that the State believed its recommendation appropriate because "probation is to be the first alternative disposition unless it would unduly depreciate the seriousness of the offense." He continued that while

> this is a close[] case, … I don't think we're necessarily past the threshold consideration of probation, at least with what we have here [and] I don't believe that probation would necessarily unduly depreciate the seriousness of this offense. Though this is a serious offense, it's a violent crime[] and an act of domestic violence … a cowardly act.

The prosecutor further stated: "And not only that, the defendant's meddling in the criminal justice process through his jail phone calls [is] incredibly concerning, but I don't think, at least at this point, Your Honor, that probation would [un]duly depreciate the seriousness of the offense," even though "the defendant certainly has gone to great lengths to avoid responsibility for this case."

¶4 The prosecutor gave more explanation for the reason for the plea agreement: "the victim presents with credibility issues that would be difficult to surmount at trial …. The defendant certainly played a role in that to some extent, but I simply don't think that there's escaping the inconsistencies in her recantations." He added that "when we talk about whether further confinement is needed to protect the public or the offender requires correctional treatment, the defendant has already sat for roughly a year on this case." The prosecutor again noted that Hamilton "was not revoked off of his extended supervision." The prosecutor closed his argument for the State's recommended sentence:

> I think that the State's recommendation provides … an extended period of supervision over the defendant with a hefty imposed and stayed prison sentence should he decide to engage in other acts or other crimes.
>
> So for all those reasons, Your Honor, I would ask that you follow the State's recommendation.

3

The prosecutor asked that the recommended sentence run "consecutive" to another sentence Hamilton was then serving.

¶5    Hamilton's counsel then spoke, asserting that the incident that led to Hamilton's arrest was not as serious as it might have appeared and emphasizing that the victim had recanted and Hamilton's probation was not revoked. Counsel asked the circuit court to "follow the [State's] imposed and stayed recommendation" but to consider making the sentence concurrent instead of consecutive.

¶6    Instead of proceeding with the sentencing that day, the circuit court adjourned the hearing so it could listen to recordings of calls Hamilton made from jail to the victim in this case relating to the intimidation of a victim/witness charge. The court explained that it wanted to listen to the calls because Hamilton's counsel had "argued something that's entirely different than what's really in the [c]riminal [c]omplaint," and it was concerned it was "not getting a full picture, and I think these calls might be helpful to me getting a sense of what's happening here." The court stated that since it had "effectively gone a different direction," it would "allow the Defense to argue again regarding those calls and clarify[] the argument you want to make. I'll ask you questions. I'll review the calls so you're not foreclosed from presenting any argument whatsoever, so it wouldn't be to [Hamilton's] prejudice…. [And] the defendant will get his allocution then."

¶7    The circuit court also inquired about a statement in the criminal complaint indicating the victim was pregnant. The prosecutor informed the court that the pregnancy "was a fabrication," and Hamilton's counsel added, "she was not pregnant as she stated." The court responded, "Well, that's something to know

too. I mean, that's a huge fact." The court indicated it had read the letter the State had submitted pre-plea in which the State provided reasons why it agreed to the plea agreement.

¶8 When the sentencing hearing continued several weeks later, the circuit court recited the charges Hamilton had pled to, and the hearing proceeded as relevant:

> THE COURT: And then the State is going to recommend in consideration for the plea, three years probation, consecutive to any other sentence, with an imposed and stayed prison sentence of two and two. Is that correct?
>
> [Prosecutor]: It is.
>
> THE COURT: … [I]t's been a while and I've been listening to phone calls. Were there any other conditions the State is recommending, or is that up to the Judge?
>
> [Prosecutor]: … I don't think that there are any negotiated terms, so I would just leave it to the Court.
>
> THE COURT: … [T]he State's not making any recommendations on conditional jail time, correct? It's not part of your plea deal?
>
> [Prosecutor]: Correct.

The court asked the State for any additional sentencing argument, and the following exchange occurred:

> [Prosecutor]: Judge, … the State … would stand by its recommendation, noting that it's ethically bound by the recommendation in this case…. [B]ut I would suggest that the landscape has changed between our previous hearing and this one. Such that, I'm ethically bound to the recommendation, and I would strongly—
>
> THE COURT: Well, what landscape is that?
>
> [Prosecutor]: Your Honor, the defendant has been charged with additional felonies … for an incident that happened before this case was charged. It was not brought to my

5

attention until after our previous hearing. He was charged for those incidents, and the Victim in this case is currently—is sitting in jail on serious felony charges as well. So I'm ethically bound by the recommendation and would ask that the court follow it, but beyond that … I have no further argument.

THE COURT: … [Y]ou make … whatever recommendation you want. And obviously, for the record, the Court was very concerned, and has been very concerned about the State's recommendations in this case, and the plea deal that was struck, that's no secret….

….

… I did read your [pre-plea] letter, I just read it over earlier…. And we went from strangulation/suffocation to battery and had the plea, and I didn't feel I had a lot of information and felt I needed more, and I asked for it. And that's why I asked for these calls.

¶9    The circuit court expressed that it has a responsibility to have complete and current information about a defendant before sentencing and added, "So the State is bound by whatever it's bound by. And I'm not—we've taken the plea … And I think once the plea's taken it … I think if it was before then you'd have a different issue." The dialogue continued:

[Prosecutor]: And Your Honor, my argument in that regard is for purposes of recognizing that the State's recommendation is what it is, and the State stands by it, recognizing that the landscape has changed. I would ask that you follow it, and I would … suggest that the Court has everything before it, and has analyzed everything that the State would be referencing as argument. So the State would ask that you follow the recommendation with no further arguments.

THE COURT: Except … you're very cryptically telling me he's been charged with something else and I—

[Prosecutor]: And Judge, I don't want to tread over my plea agreement, so I would just ask that you follow the recommendation.

[Hamilton's Counsel]: It's very simple. He's presumed innocent on the other case, the Court should not consider it.

6

[Prosecutor]: And that's not what I'm saying. I just do not want to breach my plea agreement, and I would ask … that the Court follow the recommendation with no further argument.

THE COURT: All right. [Hamilton's counsel], … so if he's been charged with other things, you're telling me I can't consider that at sentencing?

….

[Hamilton's Counsel]: I don't think the Court should consider it. If you want to consider it then—

….

THE COURT: … I'm just mystified, again.… I've got a [prosecutor] that … claims he's going to breach a plea agreement if you tell me he picked up additional charges. I don't know where that comes from, you honor your plea agreement by making your recommendation.

… [I]f Mr. Hamilton … acts on video, kills someone in jail while they're … awaiting sentencing, you can't tell the trial court that happened? That makes no sense to me, because it would go to the defendant's character. And if he didn't follow jail rules, or if he stole from other inmates, it[] goes to the character of the defendant. Courts have broad discretion at sentencing to consider things.

….

[T]he State is telling me—I didn't introduce this, by the way, it's not like I went out and did a CCAP-run of Mr. Hamilton, that did not happen, I have no idea what Mr. Hamilton's charges are, other than the ones I have here.… That's why I'm left to speculate, and perhaps that's how the parties want it. I'm absolutely baffled, and it puts the Circuit Court in a tough position.

….

[THE COURT:] The State has raised a specter and it's cast a cloud in part over the sentencing, by saying there is something more I should know, but I can't tell you because it could jeopardize the recommendation they're making. And I think that's a worse situation than finding out what it is and determining if it should be [given] any weight at all.

Discussion continued:

[THE COURT:] The State raised it. The State's not bre[a]ching its plea agreement. So the worst thing is I can assume the worst, and that would be the wrong thing to do too. If I have the information, I can appropriately address it and give it weight: some weight, or no weight at all.

So what are the charges?

[Prosecutor]: Well, Your Honor, the defendant is currently facing a charge for manufacture or delivery of cocaine, more than 5 grams, fewer than 15 grams, as a repeater, as a second and subsequent offense from an incident … which occurred on the 15th of May of 2020. Which I would note, is two months before this case.

….

THE COURT: … At least … I can now address it without—I think we have a worse case if I don't know…. [T]he jail calls there's clearly a number of things going on and at least implied references of potential other things happening that caused the Court to question. They were talking about transactions and so on. And those were referenced in the jail calls….

I'd like to hear the State's argument on why the State's recommendation is here, however. The State's not recommending any jail time, correct?

[Prosecutor]: Beyond the imposed and stayed, no.

.…

THE COURT: … So you're not telling me to put him in prison.

[Prosecutor]: Right. And—

THE COURT: It's not the State's recommendation.…

[Prosecutor]: And Your Honor, the State's lack of a recommendation of condition time is in recognition of the fact that the defendant has already sat for a year on this.

THE COURT: And that's, I think, in your [pre-plea] letter.

[Prosecutor]: I believe so.

> THE COURT: Okay.… And so the State wants to offer no further argument?
>
> [Prosecutor]: No.

¶10 The circuit court next asked Hamilton's counsel for his sentencing remarks, which he provided and then also stated: "We'd ask that you follow the State's recommendation of imposed and stayed prison; and place him on probation." Hamilton provided his allocution, then the court sought to confirm that the victim had fabricated her story about being pregnant. The prosecutor again informed the court that it was his belief "that the pregnancy … was a fabrication." The court asked if the defense had anything else to add for sentencing, especially in light of the court having listened to the recorded jail calls in which Hamilton made references to "transactions."

¶11 The circuit court discussed the facts of the case and various sentencing considerations as they relate to the case. It expressed that "the facts of the case are serious, it's domestic abuse…. I think the facts are extremely aggravated by the jail calls," discussing in part "the number of times the defendant is instructing the Victim to effectively change the story and change the facts, so that he could … avoid criminal responsibility in this case. And it goes on, and on, and on. He did it knowingly, maliciously." The court further noted that it appeared that the victim's story about being pregnant was created during these calls, viewing it as being "concocted to avoid prosecution in this case." The court discussed a prior felony conviction of Hamilton's for possession of heroin with intent to deliver, as a repeater, as well as the harm that comes from dealing drugs. The court added, "[h]e faces new charges for [the manufacture or delivery of cocaine]" and "I'll give [Hamilton's counsel] the benefit of the doubt, I won't consider those. It was better than having a mystery."

9

¶12    The circuit court continued, "[T]he Court's initial directive in sentencing is to consider probation as the disposition, which the State has recommended here…. [W]ith and without, I guess, some explanation." The court stated that probation would "unduly depreciate the seriousness of the offense" in this case and also noted that Hamilton was already on extended supervision for his prior drug offense when he committed the offense in this case. The court observed again that "[t]he State has this imposed and stayed prison sentence that's hanging out there." The court stated:

> I think this is a prison case, and the facts here and the phone calls bear that out. The defendant's past criminal history, and his actions in this case deserve punishment, and punishment beyond, simply, withholding sentence on a jail, as the State has said. And this is not a probation case, by any stretch of the imagination for the reasons that I have set forth.

The court further discussed other sentencing considerations justifying its imposition of a sentence of two years of initial confinement followed by two years of extended supervision, consecutive to any other sentence. The court reiterated that it was "not consider[ing]" the pending manufacture or delivery of cocaine charge.

¶13    Hamilton filed a motion for postconviction relief, asserting the prosecutor breached the plea agreement—particularly emphasizing the prosecutor's statements at the second sentencing hearing that the "landscape has changed" and he was "ethically bound" to stand by the plea agreement—and that his counsel performed ineffectively by not objecting to the breach. After stating that this is a "very, very close" case, the circuit court ultimately denied the motion, concluding that there was no material and substantial breach of the agreement. Hamilton appeals.

*Discussion*

¶14 On appeal, Hamilton continues his claim that the prosecutor breached the plea agreement with his comments at sentencing and his counsel performed ineffectively by failing to object. As the circuit court noted, this is a "very, very close" case. That said, even close cases have to be decided one way or another, and in this case, Hamilton has failed to convince us the court erred in determining the State did not materially and substantially breach the plea agreement.

¶15 A thorough review of cases similar to this one, including cases cited by the parties, reveals that breach-of-plea-agreement cases are very fact specific. As a result, we focus on the primary guiding principles and the undisputed facts of this case as they relate to those principles. As we have stated,

> If the State materially and substantially breaches a plea agreement, a defendant may be entitled to vacation of the agreement or resentencing. Where, as here, there is no dispute regarding the terms of the agreement or the State's conduct allegedly constituting a breach of it, we consider only whether the State's conduct constituted a breach and whether that breach was material and substantial, questions of law we review de novo.
>
> .…
>
> At sentencing, "[t]he State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." That said, the State also cannot agree to keep relevant information from the sentencing judge. As such, the State walks a "fine line" in balancing "its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement."

*State v. Wood*, 2013 WI App 88, ¶¶7-9, 349 Wis. 2d 397, 835 N.W.2d 257 (alteration in original; citations omitted).

¶16 Hamilton acknowledges that the prosecutor "accurately stated the literal recommendation" and gave his "endorsement"[2] of the "agreed-upon recommendation," but insists the State breached the plea agreement because (1) the prosecutor twice stated that "the landscape has changed" and (2) while the prosecutor stated the State was "stand[ing] by its recommendation," he also three times expressed that he was "ethically bound" by the agreement. Because we conclude that the totality of the prosecutor's comments do not amount to a material and substantial breach of the agreement, we affirm.

¶17 As stated, at the postconviction hearing, the circuit court recognized that this was a "very, very close" case and indicated that "if anything [there was] a technical breach which would have been cured by the later explanation" of the prosecutor. The court did not believe any breach, if there was one, was material and substantial, essentially because the prosecutor's comments did not defeat the benefit for which Hamilton had bargained.

¶18 While the prosecutor was inartful in his choice of terms, i.e., that "the landscape has changed" since the plea hearing and he was "ethically bound" to the sentencing recommendation he had agreed to as part of the plea agreement, he stood clearly and unwaveringly behind the agreement. We note that after the prosecutor stated that "the landscape has changed" and the circuit court inquired as to what he meant by that, the prosecutor not only referenced Hamilton having been charged with an additional felony "for an incident that happened before this case was charged," but he also stated that "the Victim in this case is currently—is

---

[2] Hamilton refers to this as the State's "bare endorsement of the agreed-upon recommendation."

sitting in jail on serious felony charges as well." So, indeed, the landscape had changed with regard to not just Hamilton but the victim as well.[3] The prosecutor was certainly within his right to inform the court of new, relevant developments since the plea hearing. *See State v. Williams*, 2002 WI 1, ¶50, 249 Wis. 2d 492, 637 N.W.2d 733 ("[T]he State is not barred from using negative information about the defendant that has come to light after the plea agreement and before the sentencing."); *State v. Liukonen*, 2004 WI App 157, ¶10, 276 Wis. 2d 64, 686 N.W.2d 689 (recognizing that "nothing prevents prosecutors from supplying information that supports a harsher sentence than the one recommended by the prosecutor").

¶19 Hamilton repeatedly points out that the prosecutor "said nothing positive about Mr. Hamilton whatsoever." To begin, Hamilton has failed to direct us to any case indicating a prosecutor must say positive things about a defendant to avoid breaching a plea agreement. *See State v. Naydihor*, 2004 WI 43, ¶30, 270 Wis. 2d 585, 678 N.W.2d 220 ("[W]e have found no case that holds that the State is obligated to say something nice or positive about the defendant in order to avoid breaching a plea agreement."). Moreover, we think the prosecutor's comments were measured and appropriate in light of the circumstances, those being that the circuit court appeared to be of the opinion that Hamilton was getting a "sweetheart deal" on some serious charges.

¶20 First, the prosecutor was perfectly justified in making comments casting Hamilton and his offense in a critical light in order to justify his request for

---

[3] The circuit court noted at one point that "it may be … to [Hamilton's] benefit, if the Victim is now subject to charges as well."

a consecutive, instead of concurrent, sentence as well as the recommended imposed and stayed prison sentence. *See* *Wood*, 349 Wis. 2d 397, ¶13; *Naydihor*, 270 Wis. 2d 585, ¶29. The prosecutor did, however, make numerous comments in support of and justifying the recommended sentence.

¶21 At the initial plea and sentencing hearings, the prosecutor asked the circuit court no fewer than seven times to follow the State's sentencing recommendation. In his efforts to get the court to adopt that recommendation, he twice pointed out that Hamilton had not been revoked as a result of his conduct leading to his arrest in this case, explained that "probation is to be the first alternative disposition," and while this is a "close[] case," probation "would [not] necessarily unduly depreciate the seriousness of this offense." The prosecutor further emphasized that the victim had "credibility issues" (such issues would undermine not only the likelihood of a conviction if the State took the case to trial but also the overall certainty as to the victim's initial allegations which led to Hamilton's arrest). The prosecutor indicated that no further confinement time was needed because Hamilton "has already sat for roughly a year on this case."

¶22 When the sentencing hearing continued several weeks later, the prosecutor again stood by the State's sentencing recommendation. When the circuit court recited the recommendation and asked the prosecutor, "Is that correct?" the prosecutor shot back, "It is." When the court then asked, "[T]he State's not making any recommendations on conditional jail time, correct? It's not part of your plea deal?" The prosecutor responded, "Correct." Later in the hearing, the prosecutor twice stated that the State was "stand[ing] by" its recommendation despite the "landscape" having changed since the plea hearing. The prosecutor "suggest[ed] that the Court has everything before it, and has analyzed everything that the State would be referencing as argument. So the State

14

would ask that you follow the recommendation with no further arguments." The prosecutor repeatedly encouraged the court to "follow the recommendation."

¶23 When the circuit court asked the prosecutor to divulge the new charges filed against Hamilton, the prosecutor explained that it was a delivery-of-cocaine charge, and after providing the date of the charge, he emphasized, "Which I would note, is two months before this case." As the prosecutor's comments came to a close, he again confirmed, in response to an inquiry from the court, that the State was "not recommending any jail time" and was "not telling [the court] to put [Hamilton] in prison," pointing out again that "the State's lack of a recommendation of condition time is in recognition of the fact that the defendant has already sat for a year on this."

¶24 Hamilton claims the State "backed away from its recommendation at the sentencing hearing" and "impli[ed] that Mr. Hamilton should receive a harsher sentence than what the prosecutor had agreed to recommend." We do not see that; instead, the record indicates the prosecutor ardently stuck to and repeatedly asked the circuit court to go along with the sentencing recommendation. The record does not suggest the prosecutor was trying to do a nod, nod, wink, wink in an attempt to get the court to impose a stiffer sentence than the agreed-upon recommendation. What the State could not do is step over the line to "covertly convey to the trial court that a more severe sentence is warranted than that recommended." *Wood*, 349 Wis. 2d 397, ¶9 (citation omitted). While the prosecutor may have come close to that line, he did not step over it as he repeatedly emphasized to the court that, despite an additional felony charge against Hamilton, the State stood firmly by its recommendation. As the court noted in denying Hamilton's postconviction motion, the totality of the prosecutor's sentencing presentation did not indicate that he was backing away

15

from the recommendation of an imposed and stayed sentence of two years of initial confinement followed by two years of extended supervision, with Hamilton being placed on probation instead. We agree.

¶25 Because the prosecutor's comments did not constitute a material and substantial breach of the plea agreement, Hamilton's counsel was not ineffective for failing to object. *See Naydihor*, 270 Wis. 2d 585, ¶9 ("If the State did not breach the plea agreement, then the failure of [defense] counsel to object did not constitute deficient performance.").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.